804 A.2d 625

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Ernest SIMMONS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 4, 2000.

Decided Dec. 31, 2001.

Reargument Denied May 24, 2002.

406

412

414

James H. Moreno, Philadelphia, Jerome H. Nickerson, Bel Air, MD, for appellant.

Christian A. Fisanick, Pa. Dist. Attys. Ass'n, Robert A. Graci, Office of Atty. Gen., for appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*OPINION ANNOUNCING THE JUDGMENT OF THE COURT*

Chief Justice FLAHERTY.

This is an appeal as of right from an order of the Court of Common Pleas of Cambria County which denied PCRA relief in a capital case. The appellant, Ernest Simmons, was convicted of first-degree murder for violently pounding and strangling an eighty-year-old woman, Anna Knaze. The factual background of the case is fully described in *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995), wherein this court affirmed appellant's conviction and sentence on direct appeal.[1]

---

1. .Briefly, the facts of the case are that four witnesses observed appellant talking with the victim outside her house on the morning of the murder. Two of the witnesses heard appellant ask the victim if he could use her telephone because his car had broken down. They then saw appellant and the victim enter her house. The victim was never seen alive again. Further, when appellant attempted to rape another victim several hours after the murder, he told the sixty-two-year-old rape victim, "If you open your mother fucking mouth, you'll get the same thing Anna Knaze [the murder victim] got." The body of the murder victim was not discovered until approximately fourteen hours later. *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621, 629 (1995).

■ In order for post-conviction claims to be cognizable under the PCRA, all of the requirements of the PCRA must be set out in the petitioner's brief. For example, a PCRA petitioner who is claiming ineffectiveness of counsel must set out the following:

1. the ineffectiveness complained of;
2. the circumstances of the case as they relate to the claimed ineffectiveness;
3. that the ineffectiveness undermined the truth-determining process;
4. that there could have been no reliable adjudication of guilt or innocence;
5. that the claim now being made was not previously litigated or waived;
6. that the failure to litigate the issue earlier was not the result of any rational strategic or tactical decision by counsel;
7. that there is merit to the claim of ineffectiveness;
8. that counsel had no reasonable basis for his conduct;
9. that there is a reasonable probability that but for the act or omission challenged, the outcome of the proceeding would have been different.

Title 42 Pa.C.S. § 9543(a)(2)(3)(4); *Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

■ There are claims other than ineffectiveness of counsel which may be made pursuant to the PCRA, and for each such claim made, there are certain requirements in the PCRA itself which must be set out in order for the claim to be cognizable. The requirements of a PCRA ineffectiveness claim, stated above, is only an example of what must be set out for one type of claim.[2]

---

**2.** In order to avoid confusion as to whether a petitioner has stated all that is required for a particular PCRA claim, *each claim* must contain a statement as to what is required in order for that particular claim to be cognizable under the PCRA and argument that fully supports each of the required elements. A PCRA petitioner may not rely on statements made in any other section of his brief as partially or fully meeting the requirements of the claim at issue.

Appellant's first four issues allege due process errors. Although appellant does not specify the section of the PCRA which applies to these claims, it is § 9543(a)(2)(i). Under this section, a PCRA petitioner must plead and prove that the conviction or sentence resulted from: "A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i).[3]

The first of these four due process claims of error is that the Commonwealth improperly employed an undisclosed state agent to intercept his communications after his Sixth Amendment right to counsel had attached. Appellant neither pleads nor proves any of the matters required by the PCRA, nor could he, for the fruits of the allegedly illegal interceptions were never introduced at trial and the truth-determining process, therefore, could not have been undermined.

The second, third, and fourth due process claims are (2) that state and federal due process rights were compromised when the Commonwealth engaged in false argument and suppressed material and exculpatory evidence; (3) that due process was violated when the Commonwealth suppressed laboratory reports concerning the reported rape; and (4) that due process was violated when the Commonwealth suppressed evidence that it was involved in the favorable disposition of charges against its rape-victim witness concerning her purchase of a gun in violation of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S. § 6105(a)(1).

Appellant fails to discuss these claims in the context of the circumstances of the case. Specifically, appellant has failed to make reference in relative fashion to other evidence upon which the conviction was based, and in the absence of that discussion, this court is unable to determine that no reliable

3. 42 Pa.C.S. § 9543(3) and (4) are inapplicable because the due process claims are that evidence was wrongly suppressed. Since the suppression was not known at earlier stages of the proceedings, it could not have been litigated earlier.

adjudication of guilt or innocence could have taken place at appellant's trial. No relief, therefore, is due.

■ Appellant contends that trial counsel was ineffective for failing to present impeachment evidence to discredit the testimony of Margaret Cobaugh, who said that appellant attempted to rape her in the early morning hours of May 6, 1992 and that appellant then made reference to the Knaze homicide which had not yet been discovered. Specifically, it is alleged that counsel should have introduced testimony of Dorothy Knisel, Cobaugh's next-door neighbor, to contradict Cobaugh's testimony that at the time of the sexual assault she was returning home from a visit with Knisel who had called her for assistance in repairing an oxygen tank. Cobaugh testified that she had been unable to fix the tank and that she called an ambulance company which came to the scene and fixed the tank. Knisel allegedly could have testified that Cobaugh did not visit her at that time, and that Knisel had not requested Cobaugh's assistance with the tank.

Appellant has failed to discuss this contention with reference to the circumstances of the case. 42 Pa.C.S. § 9543(a)(2)(ii). Specifically, appellant has not referred, in relative fashion, to the other evidence upon which his conviction was based. It is impossible, therefore, to assess whether further impeachment of Cobaugh would have had any effect in the face of all the other incriminating evidence. Hence, relief must be denied.

■ Next, appellant asserts that counsel was ineffective for failing to introduce evidence of an alleged tacit admission by Cobaugh that she had not been subjected to a sexual battery by appellant. The asserted admission arises from the fact that when defense investigators tried to interview her about the sexual battery, she immediately began yelling at them to leave. In the midst of her screaming, her husband told her to tell the truth, but she did not respond. She was in an agitated and nervous state, waving her arms and screaming that she did not want to talk to the investigators.

With respect to this claim, appellant has again failed to discuss the circumstances of the case. 42 Pa.C.S. § 9543(a)(2)(ii). Specifically, in his discussion of this issue. appellant has not described the other evidence upon which his conviction was based. This makes it impossible to assess whether the impeachment of Cobaugh, if such were possible on the ground of tacit admission, would have had any effect in the face of the other incriminating evidence. Relief must, therefore, be denied.

■ It is next argued that counsel was ineffective for failing to present at the penalty stage various lay and expert testimony regarding appellant's background and mental health. The evidence allegedly would have indicated that appellant had a troubled childhood and emotional problems.

In asserting counsel's failure to present lay and expert testimony, appellant fails to discuss the circumstances of the case, particularly the evidence favoring imposition of the sentence of death. It is impossible, therefore, to assess whether absence of the testimony in question would have so undermined the truth-determining process that no reliable adjudication could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii). Relief must accordingly be denied.

■ Appellant next contends that trial counsel ineffectively engaged in a penalty phase strategy designed to show that Knaze became unconscious while being assaulted and so could not have been tortured. See 42 Pa.C.S. § 9711(d)(8) (torture as aggravating circumstance). It is claimed that counsel's questioning unnecessarily elicited graphic and harmful details from the autopsy report.

Appellant fails to discuss this claim with regard to the circumstances of the case, 42 Pa.C.S. § 9543(a)(2)(ii). For example, there is no discussion of whether details of these graphic matters had already been placed in evidence at the guilt phase of trial. Nor does appellant describe other penalty phase evidence supporting imposition of the death sentence, as would be necessary for consideration of whether the matters

complained of were significant enough to have affected the reliability of the adjudication.

It is next asserted that the trial court's instruction on the aggravating circumstance of torture, 42 Pa.C.S. § 9711(d)(8), was unconstitutionally vague.[4] The court instructed that this aggravating circumstance was inapplicable unless appellant intended to inflict a considerable amount of pain or suffering, and that the murder must have been committed in a manner that was "unnecessarily heinous, atrocious or cruel, manifesting exceptional depravity." This was identical to instructions regarding torture as an aggravating factor that we have previously upheld. *Commonwealth v. Edmiston,* 535 Pa. 210, 236, 634 A.2d 1078, 1091 (1993). The instruction, therefore, was proper, and, to the extent that appellant's argument may be construed as a challenge to the aggravating circumstance itself, we note that a constitutional challenge based on vagueness has already been rejected. *Commonwealth v. Pursell,* 508 Pa. 212, 238, 495 A.2d 183, 196 (1985).

In the penalty phase, the jury found as an aggravating circumstance that appellant has a "significant history of felony convictions involving the use or threat of violence to the person," 42 Pa.C.S. § 9711(d)(9). Appellant contends that this aggravating circumstance is unconstitutionally vague, in that it provides no definition of the term "significant." This contention is patently meritless, as this court has repeatedly rejected the very same argument. E.g., *Commonwealth v. Rivers,* 537 Pa. 394, 412–13, 644 A.2d 710, 719 (1994).

Next, appellant asserts that the trial court erred in instructing the jury that "aggravated circumstances are things about the killing and the killer which make a first degree murder case more terrible and deserving of the death penalty, while mitigating circumstances are those things which make the case less terrible and less deserving of death." This instruction simply placed aggravating and mitigating circum-

4. When patently meritless claims are raised, we will reject them as such without regard to whether they have been briefed in conformity with appellant's burden under the PCRA.

stances in common sense language for the jury. It was not misleading or erroneous. In *Commonwealth v. King*, 554 Pa. 331, 364, 721 A.2d 763, 779–80 (1998), we upheld a virtually identical instruction and noted its conformity with the Pennsylvania Suggested Standard Criminal Jury Instructions. Accord *Commonwealth v. Saranchak*, 544 Pa. 158, 174–76, 675 A.2d 268, 276–77 (1996) (upholding a similar instruction, and noting that a "trial court is free to use its own form of expression in order to explain to the jury often-difficult legal concepts"). This claim is, therefore, without merit.

The next issue raised by appellant alleges a violation of Pa.R.Crim.P. 305(B)(1)(d) (Commonwealth's duty to disclose circumstances of photographic identification) and a due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This claim concerns what he calls a "misidentification" by a key witness. His argument is that Margaret Cobaugh, who identified him at trial, had earlier failed to identify him when she was shown a mugbook; moreover, the Commonwealth failed to inform him of this fact, and affirmatively misrepresented it through the perjurious testimony of detective Rok, who allegedly denied, during the preliminary hearing in the rape case, that Cobaugh had been shown a mugbook. Appellant argues that this false testimony violated *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); and *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and cannot be said to have "no effect" on the outcome of his trial.

The essence of appellant's claim is that if he had known of Cobaugh's failure to identify him from a mugbook he would never have requested the lineup, which, he asserts, is an inherently risky defense strategy. He would instead have used her failure to recognize his picture in the mugbook to impeach her identification at trial.

The record reflects that Cobaugh was shown a mugbook and failed to identify appellant and that Detective Rok

testified, in the separate rape proceedings, that Cobaugh never looked at a mugbook. The Commonwealth argues that the detective misspoke and that it was not an intentional falsehood. It is irrelevant, however, whether or not the detective intended to mislead appellant. The misinformation was a violation of Pa.R.Crim.P. 573. Rule 573 (formerly Rule 305) was promulgated in response to the dictates of *Brady*. *See Commonwealth v. Green*, 536 Pa. 599, 607, 640 A.2d 1242, 1246 (1994). The rule provides, in pertinent part, as follows:

(B) DISCLOSURE BY THE COMMONWEALTH

(1) MANDATORY

In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth;

Pa.R.Crim.P. 573(B)(1)(a). In the event of a violation of Rule 573, the trial court "may order [the offending] party to permit discovery or inspection, may grant a continuance, or may prohibit [the offending] party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. 573(E).

In *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the United States Supreme Court specifically rejected the notion that *Brady* does not apply to evidence "known only to police investigators and not to the prosecutor." *Kyles*, 514 U.S. at 438, 115 S.Ct. 1555; *see also Strickler v. Greene*, 527 U.S. 263, 280–81, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). As the Supreme Court explained in *Kyles:*

To accommodate [the view that the prosecution is not accountable for undisclosed evidence known only to the police] would ... amount to a serious change of course from the *Brady* line of cases. In the State's favor it may be said that no one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that "procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Since, then, the prosecutor has the means to discharge the government's *Brady* responsibility if he will, any argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government's obligation to ensure fair trials.

514 U.S. at 438, 115 S.Ct. 1555. Thus, under *Kyles,* the prosecution's *Brady* obligation clearly extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution. To the extent that Rule 305(B) and the cases construing it could be read to suggest otherwise, such readings must bow to *Kyles'* elaboration of the prosecutor's *Brady* duty respecting exculpatory evidence.

Thus there is merit to this claim of error.

 The law governing such a violation is easily stated. In *Brady,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and that the duty encompasses impeachment evidence as well as directly exculpatory evidence, *United States v. Bagley,* 473 U.S. 667,

676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). On the question of materiality, the Court has noted that "[s]uch evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene,* 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375). The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. "Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler,* 527 U.S. at 290, 119 S.Ct. 1936 (quoting *Kyles,* 514 U.S. at 435, 115 S.Ct. 1555). Thus, there are three necessary components that demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued. *Strickler,* 527 U.S. at 281, 119 S.Ct. 1936.

The first two components are present. The evidence was favorable to appellant in that it was impeachment evidence and it was inadvertently suppressed by the prosecution. The remaining element is prejudice. In this context, prejudice requires a showing that there exists "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," and "whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler, supra.*

The nondisclosure of Cobaugh's failure to identify appellant from a mugbook does not come close to establishing the prejudice which would entitle appellant to relief. In the first place, there is no evidence of the circumstances of Cobaugh's viewing of the mugbooks. More important, failure to pick out a black-and-white photograph from among hundreds pales to insignificance when Cobaugh later identified appellant from a

lineup. In addition, Cobaugh was one of multiple witnesses who identified appellant, and there was no serious question of identification in appellant's prosecution. Thus, foreclosure of the mere opportunity of impeaching Cobaugh's identification at trial by informing the jury that she had failed to identify appellant from a mugbook does not begin to establish a reasonable probability that the result of the trial would have been different, or reasonably be taken as to put the whole case in such a different light as to undermine confidence in the verdict.

We conclude, therefore, that appellant is not entitled to relief on this ground.

■■■ Appellant next claims that the Commonwealth impermissibly exercised its peremptory jury challenges to exclude potential jurors on the basis of their gender, in violation of *J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), and Article I, section 28 of the Pennsylvania Constitution (the equal rights amendment), and that all prior counsel were ineffective for failing to properly litigate this claim. He asserts that the Commonwealth admitted this constitutional deprivation by explaining at trial, when appellant challenged the peremptory exclusion of venireman Carolyn Jenkins as racially motivated, that the prosecution struck her not because she was black, but because she was female and the Commonwealth was looking for a gender-balanced jury, wanting to avoid an overwhelmingly female jury.

On direct appeal, this court held that appellant had "failed to establish any facts or circumstances which raise an inference of purposeful discrimination based on race" which would have violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Commonwealth v. Simmons*, 662 A.2d at 632. The court "acknowledged," however, in dictum, that the exclusion of Jenkins might have run afoul of the holding in *J.E.B. v. Alabama. Id.* at 632 n. 9.

■■■ We reject this claim for several reasons. First, trial counsel could not possibly have been ineffective for failing to raise this claim, as *J.E.B. v. Alabama* was not decided until

after appellant's trial and it is axiomatic that counsel will not be deemed to be ineffective for failing to predict a change in the law. Second, appellant has not argued, much less established, that the exclusion of venireman Jenkins could have had any possible effect on the outcome of his trial. Finally, the Commonwealth gave a second reason for the exclusion of Jenkins which was both race—and gender-neutral: the Commonwealth stated that she was excluded because she failed to answer questions on the written voir dire form.

■ Next, appellant raises the claim that trial counsel was ineffective for failing to "life-qualify"[5] the jury and that appellate counsel was ineffective for failing to raise this claim. This resulted, appellant asserts, in the empaneling of a jury which was biased against him and biased in favor of the death penalty. This argument has been rejected by this court in *Commonwealth v. Keaton*, 556 Pa. 442, 729 A.2d 529, 543 (1999), where we held that there is no requirement that a jury be life-qualified, but that if a defendant chooses to life-qualify a jury, a trial court must permit him to do so. There is no implication or holding that the choice *not* to life-qualify a jury amounts to advocacy so glaringly substandard as to amount to a deprivation of the Sixth Amendment right to counsel.

■ Coupled with the "life-qualification" argument are claims related to three veniremen: appellant alleges that jurors Kathleen Foley and Terrol Vaughn were improperly empaneled after equivocating on their attitudes towards the death penalty—in other words, failing to appreciate the "awesome" responsibility of deliberating on a life or death verdict; he also claims that Patricia Higdon was improperly excluded for cause because she asserted that she could set aside her beliefs and follow the law after she had unequivocally told the court she did not believe in the death penalty. These claims

5. "Life-qualification" refers to the process by which counsel or the court identifies and excludes those veniremen who have a fixed opinion that a sentence of death should always be imposed for a conviction of first-degree murder. *Commonwealth v. Keaton*, 556 Pa. 442, 729 A.2d 529, 542 n. 9 (1999).

are raised as trial error and are not cognizable under the PCRA, as they have been waived.

Appellant's next claim is that the trial court erred by providing written instructions to the jury during the penalty phase and that all prior counsel were ineffective in failing to object and pursue this issue on appeal. This issue is waived. But for the ineffectiveness tag-line, the argument is presented as if this were a direct appeal alleging trial court error, rather than the PCRA appeal that it is. Apparently appellant mistakenly believes that the mere addition of an ineffectiveness label placed upon a claim argued as trial court error renders the claim immune from the waiver provisions of the PCRA.

Such claims are not reviewable as claims of trial court error because any such claims are waived under the PCRA, *see* 42 Pa.C.S. §§ 9543(a)(3), 9544(a),(b), and, as we have made clear, our practice of relaxing waiver in capital appeals does not extend to capital PCRA appeals. *E.g. Commonwealth v. Albrecht*, 554 Pa. 31, 44, 720 A.2d 693, 700 (1998). A contrary practice, in addition to destroying any prospect of finality in criminal cases, would run "afoul of the very terms of the [PCRA,] which excludes waived issues from the class of cognizable PCRA claims." *Id.* at 45, 720 A.2d at 700. Claims otherwise cognizable under the PCRA, which are waived, are simply unavailable. Thus, contrary to appellant's apparent misunderstanding, his allegation of ineffectiveness of counsel cannot serve to revive his waived claim of trial error, nor do they "excuse" his waiver of the claim. Waived claims simply have no place under the PCRA.

Ineffectiveness claims, however, are cognizable under the PCRA; indeed, they amount to the lifeblood of the PCRA. As a practical matter, PCRA petitioners routinely take waived claims of trial error and raise them under the rubric of ineffectiveness, alleging as many "layers" of ineffectiveness as are necessary to obtain review. But it is absolutely essential to recognize that ineffectiveness claims are not the same as the waived underlying claims from which they derive. Ineffectiveness claims are independent, discrete claims of constitu-

tional dimension, arising under the Sixth Amendment. They are, in essence, claims of constitutional malpractice, *i.e.*, claims that counsel was so incompetent as to have effectively deprived the defendant of his or her constitutional right to counsel. Allegations of ineffectiveness are serious matters not only because of the prejudice inuring to a defendant in those instances when counsel indeed has been constitutionally incompetent, but also because the allegation itself is a grave one to level at an attorney. The underlying non-cognizable claim, which often is not itself even of constitutional dimension, is relevant *only* as it bears upon the Sixth Amendment analysis.

The PCRA recognizes ineffectiveness claims as distinct claims—not labeling mechanisms to evade the effect of waiver of the underlying claims.[6] Claims of ineffectiveness are subject to specific pleading and proof requirements under the PCRA. Mere boilerplate assertions, such as those made here, are inadequate to prove the effective denial of the right to counsel necessary to warrant PCRA relief.

Furthermore, the PCRA provisions regarding ineffectiveness require no more than what a constitutional ineffectiveness analysis has always required, regardless of whether the claim is posed under the PCRA or at an earlier appropriate stage of the litigation. Counsel is always presumed effective; the unshifting burden to prove ineffectiveness always rests upon the defendant and the defendant must always plead and prove both that counsel's performance was deficient and that actual prejudice resulted from the deficient performance. Boilerplate allegations have never been sufficient to discharge this affirmative burden to rebut the presumption of effectiveness. *Commonwealth v. Pettus*, 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981) (court will not consider

---

6. Thus, strictly speaking, a successful demonstration of ineffectiveness does not operate to "excuse" a waiver, as we have occasionally, and perhaps somewhat imprecisely, suggested. The ineffectiveness claim is a distinct, *cognizable* claim serving different interests than the underlying waived claim. It only affects waiver in the limited sense that the same event, say the introduction of improper evidence at trial, could form the basis for a direct claim of trial error on appeal, or a claim of ineffectiveness under the PCRA, if the direct claim was waived.

boilerplate claims of ineffective assistance). *See also Commonwealth v. Morris,* 546 Pa. 296, 312, 684 A.2d 1037, 1045 (1996) (speculative claim of ineffectiveness summarily rejected; ineffectiveness claims cannot be raised in vacuum) (citing cases); *Commonwealth v. Hentosh,* 520 Pa. 325, 334, 554 A.2d 20, 24 (1989); *Commonwealth v. Ragan,* 538 Pa. 2, 37–38, 645 A.2d 811, 829 (1994) (boilerplate allegation is no basis for relief in capital PCRA appeal).

■ Similarly, the PCRA's dual requirements that ineffectiveness claims be considered "in the circumstances of the case" and that the petitioner show that counsel's deficient performance resulted in an unreliable adjudication of guilt or innocence simply mirror the constitutional ineffectiveness analysis under *Strickland's* prejudice requirement. The *Strickland v. Washington,* Court noted that, in determining prejudice, the court "must consider the totality of the evidence before the judge or jury." 466 U.S. 668, 695, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984). Indeed, as the federal circuit courts have recognized, it is impossible to determine *Strickland* prejudice without considering the circumstances of the trial. *See Buehl v. Vaughn,* 166 F.3d 163, 172 (3d Cir.1999) (since *Strickland's* prejudice prong requires court to determine whether there is reasonable probability that, but for counsel's error, result of trial would have been different, court simply cannot make prejudice determination "without considering the strength of the evidence against the accused;" furthermore, "every other circuit has also recognized that, in analyzing *Strickland's* prejudice prong, a court must consider the magnitude of the evidence against the defendant"). *Strickland* also specifically defined prejudice in terms of the reliability of the verdict. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064 (prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"). Obviously, in drafting the PCRA, the legislature was aware of what was required to prove ineffectiveness under the Sixth Amendment. The legislation largely mirrors the constitutional framework.

In short, the standards governing review of ineffectiveness claims, including the pleading and proof requirements, are familiar and well settled. Appellant's boilerplate assertions of ineffectiveness in relation to the written jury instructions do not entitle him to relief under the PCRA.

■ Appellant's next claim is that after the Commonwealth allegedly injected the issue of his future dangerousness into his trial, he was entitled to an instruction that if he were to receive a life sentence, he would be statutorily ineligible for parole, as required by *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). He adds that trial counsel was ineffective in failing to insist on such an instruction and that prior appellate counsel was ineffective for failing to raise the issue on direct appeal. Notwithstanding appellant's assertion, the issue was raised and decided adversely to him on direct appeal. *Commonwealth v. Simmons*, 541 Pa. at 249–50 n. 25, 662 A.2d at 640 n. 15. Despite appellant's suggestion that we should reconsider our decision, the claim is not cognizable under the PCRA. 42 Pa.C.S. §§ 9543(a)(3); 9544(a).

■ Appellant asserts that if, as we have determined, none of the preceding alleged errors and omissions of counsel provides a basis for relief, then the cumulative effect of the alleged errors and omissions works a denial of due process. We have declined to recognize any generalized cumulation of errors doctrine, noting, "it is axiomatic that 'no quantity of meritless issues can aggregate to form a denial of due process.'" *Commonwealth v. Rollins*, 558 Pa. 532, 562, 738 A.2d 435, 452 (1999) (quoting *Commonwealth v. Travaglia*, 541 Pa. 108, 139, 661 A.2d 352, 367 (1995), *cert. denied*, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996)). Under the circumstances presented, we perceive no denial of a fair trial.

The final "issue" proffered by appellant consists only of a boilerplate statement that all prior counsel were ineffective for failing to raise each and every issue presented in the PCRA proceedings and in this appeal. This is not a substantive issue raising a separate ground for relief. Rather, it is a mere

attempt to establish "layering" of ineffectiveness claims to avoid the issues being deemed waived. See generally *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202, 203–04 n. 1 (2000) (layering of ineffectiveness claims). Hence, there is no substantive claim to be addressed.

For the foregoing reasons, the order of the court of common pleas is affirmed.

Justice CAPPY files a concurring opinion.

Justice CASTILLE and Justice NIGRO concur in the result.

Justice SAYLOR files a dissenting opinion in which Justice ZAPPALA joins.

Justice CAPPY, concurring.

I concur in the result reached by the majority for the reasons as more fully set forth in my concurring opinion in *Commonwealth v. Lambert*, 568 Pa. 346, 797 A.2d 232 (2001).

Justice SAYLOR, dissenting.

As similarly reflected in my dissenting opinion in *Commonwealth v. Rivers*, 567 Pa. 239, 786 A.2d 923 (2001)(Saylor, J., dissenting), I view the decision to dismiss Appellant's claims as reflected in the opinion announcing the judgment of the Court, and, in particular, those predicated upon *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as unduly formalistic. Contrary to the lead Justices' conclusion that Appellant's brief fails to contextualize such claims, *see* Opinion Announcing the Judgment of the Court, *slip op.* at 951, from my review it appears that the advocacy on the *Brady* claims is substantial.

In light of the lead's treatment of Appellant's claims, a majority of the Court is able to avoid confronting troubling circumstances that came to light after Appellant's direct review became final. In particular, the Court is presented with multiple instances of pre-trial suppression by the Commonwealth of exculpatory material in its possession. Two such

instances are admitted by the Commonwealth (albeit explained in terms of neglect, poor record keeping, and inadvertence), and the other is, in my view, not meritoriously disputed. The items suppressed by the prosecution include: 1) recordings of post-arrest electronic surveillance of multiple conversations between Appellant and his girlfriend, who acted as a Commonwealth agent in terms of questioning Appellant regarding the case and recording his answers, and ultimately testified as a Commonwealth witness at trial; 2) forensic reports concerning physical samples taken from two crime scenes, the murder scene and the scene of a subsequent sexual assault which, according to the Commonwealth's theory of the case, was perpetrated by the killer; and 3) evidence that the victim of the latter crime was unable to identify Appellant from a mug book shortly after the assault.

A *Brady* claimant is entitled to relief where there is a reasonable likelihood that, had the suppressed evidence been disclosed to the defense, the result of the proceeding would have been different. *See Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). In this inquiry, we are to consider the potential value of the evidence to the defense, including its value in terms of impeachment. *See United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Where the government's failure to disclose relevant evidence undermines a reviewing court's confidence in the verdict's reliability, this standard is met, *see Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 1558, 131 L.Ed.2d 490 (1995); *Bagley,* 473 U.S. at 678, 682, 105 S.Ct. at 3381, 3383, as is the test for prejudice under the PCRA. *See Commonwealth v. Kimball,* 555 Pa. 299, 312–13, 724 A.2d 326, 333 (1999)(holding that where there is a reasonable probability that the outcome of the trial would have been different, the PCRA's "no reliable adjudication of guilt or innocence" standard for relief is satisfied). In a case involving multiple *Brady* violations, while the tendency and force of the undisclosed evidence is evaluated item by item, the overall effect upon trial fairness must be assessed cumulatively. *See Kyles,* 514 U.S. at 436 n. 10, 454, 115 S.Ct. at 1567 n. 10, 1575.

I would not conclude that Appellant suffered prejudice if confronted with only one of the *Brady* violations here presented. Each, however, deprived the defense of a potential advantage either in terms of casting doubt upon Appellant's presence at the crime scenes, or in terms of impeaching the credibility of a key government witness. The electronic surveillance and the associated fact of the status of Appellant's girlfriend and confidant as a Commonwealth agent had potential impeachment value during her testimony as a Commonwealth witness; the forensic reports possessed a degree of exculpatory value;[1] and the assault victim's failure to identify Appellant from a mug book, again, had impeachment worth as against an important Commonwealth witness. None of this information was disclosed to the defense, even after Appellant made a specific pre-trial discovery request for electronic surveillance materials and photographic identifications of Appellant by prosecution witnesses.[2] In my view, the collective

1. The laboratory analyses of evidence from the crime scenes failed to reveal any physical evidence linking Appellant to either the sexual assault or the murder; in addition, a human hair belonging to neither Appellant nor the rape victim or her husband was found upon the victim's clothing. Although the weight of this evidence may have been modest, it did favor the defense to some degree. Other courts have recognized the effect in similar circumstances as follows:

> Petitioner alleges that his *Brady* rights were violated by the prosecution's failure to release the results of scientific tests made by the FBI on certain physical evidence until that evidence was introduced late in his trial. The district court correctly characterized the test results as 'neutral' rather than 'exculpatory.' But such a characterization often has little meaning; evidence such as this may, because of its neutrality, tend to be favorable to the accused. While it does not by any means establish his absence from the scene of the crime, it does demonstrate that a number of factors which could link the defendant to the crime do not.

*Patler v. Slayton*, 503 F.2d 472, 478–79 (4th Cir.1974); *accord People v. Nichols*, 63 Ill.2d 443, 349 N.E.2d 40, 43 (1976).

2. In this regard, the Supreme Court has observed:

> The Government notes that an incomplete response to a specific request not only deprives the defense of certain evidence, but also has the effect of representing to the defense that the evidence does not exist. In reliance on this misleading representation, the defense might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued.

effect of all of these omissions on the part of the Commonwealth creates a cloud upon the reliability of the verdict and judgment of sentence. Under these circumstances, I would award a new trial.

Justice ZAPPALA joins this dissenting opinion.

> We agree that the prosecutor's failure to respond fully to a *Brady* request may impair the adversary process in this manner. And the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption.
> *United States v. Bagley,* 473 U.S. 667, 682–83, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985). *See also United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 ("When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.")