J-S11028-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IRVIN HARPER | : | |
| | : | |
| Appellant | : | No. 1331 EDA 2022 |

Appeal from the PCRA Order Entered April 29, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011481-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IRVIN HARPER | : | |
| | : | |
| Appellant | : | No. 1332 EDA 2022 |

Appeal from the PCRA Order Entered April 29, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011482-2016

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED AUGUST 03, 2023**

Irvin Harper appeals from the order denying his Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. Harper maintains that the court erred in denying his PCRA petition because he raised meritorious claims of ineffectiveness of counsel. He also contends the court erred by failing to hold an evidentiary hearing on his petition. We affirm.

The PCRA court summarized the facts as follows:

The testimony presented at trial was that in December of 2015, [F.V.] was living at the Covenant House, a homeless shelter in the Germantown section of Philadelphia. (N.T. 6-28-2018, pp. 42-45). The shelter required the residents to obtain employment or be enrolled in school, or they would be asked to leave. [F.V.] was walking in a park near the shelter when she was approached by [Harper] who asked her if she needed a job, offering her employment hairdressing, washing hair and cleaning. (N.T. 6-28-2018, pp. 46-48). She accepted the offer and accompanied Harper to his house, where [Harper] said he had to retrieve something. (N.T. 6-28-2018, pp. 47-49). [F.V.] related that once inside, [Harper] brandished a gun from the inside of his jacket and told her to remove her clothes and to do what he told her. (N.T. 6-28-2018, pp. 49-55). [F.V.] further testified that [Harper] told her to perform oral sex upon him and then engage in sexual intercourse with Harper ejaculating on her chest, and that she was too scared to say anything, just complying to get it all over with. (N.T. 6-28-2018, pp. 49-55). Harper had told the [F.V.] that his nickname was "Gotti." (N.T. 6-28-2018, pp. 63, 65). [F.V.] returned to Covenant House but admitted that she had exchanged phone numbers with [Harper] and that the incident was repeated later because she was still scared of him and somehow thought he would still get her a job. (N.T. 6-28-2018, pp. 57-60). [F.V.] further testified that sometime later, she was outside the homeless shelter when [Harper] approached, telling her he wanted her again. [F.V.] told him no and ran back inside the shelter. Obviously upset and shaking, her roommate pressed her as to what was wrong and she told her roommate everything, eventually being moved from the shelter and making a statement to the police. (N.T. 6-28-2018, pp. 60-65). In the statement, [F.V.] admitted to having previously be[en] involved in prostitution a few years earlier when living in Egypt. (N.T. 6-28-2018, pp. 64-66).

[J.T.] testified that when she was twenty-one years old[,] she resided at the Covenant House around October 2016 for approximately three months. (N.T. 6-28-2018, pp. 96-98). [Harper] approached her, in a group of people, and offered her money to help him with a drug run. (N.T. 6-28-2018, pp. 98-100). [J.T] checked with ["]Robin["], another resident of the Covenant House, and after receiving assurances that he was alright, [J.T.] left with [Harper]. (N.T. 6-28-2018, pp. 97-103). Harper left her in the park for a short time and then reappeared with a car. They rode around for a while, evidently completing his drug run, ending

back at his house with hoagies. (N.T. 6-28-2018, pp. 97-101). Mr. Harper had informed [J.T.] as well that his nickname was "Gotti." (N.T. 6-28-2018, pp. 97-114). [J.T.] testified that while upstairs [Harper] told her she needed to keep her word, that he had given her twenty-five dollars for a drug run, bought her a hoagie and a drink and then he stripped down to his underwear. [J.T.] stated that she repeatedly told him she did not want to do this, but felt pressured. [J.T.] stated that [Harper] forced her to perform oral sex on him while she was sitting on the bed. (N.T. 6-28-2018, pp. 130-133). She finally removed her clothes and [Harper] had sexual intercourse with her. (N.T. 6-28-2018, pp. 114-119). Harper put his telephone number in [J.T.]'s cellphone and dropped her off a short distance from the Covenant House. Later that day, [J.T.] told another resident of what happened, then an administrator, and subsequently the police. (N.T. 6 28-2018, pp. 119-126).

[A.C.] testified that she was a resident of the Covenant House in the spring of 2015 when [Harper] approached her and asked if she needed a job. [A.C.] responded no and walked away from Mr. Harper. (N.T. 6-28-2018, pp. 189-194). This witness further testified that she was walking with her roommate, [F.V.], when "Gotti" was walking by the door of the Covenant House and said something to [F.V.] which made her extremely upset and she then ran away. When pressed, [F.V.] told her that "Gotti" had offered her a job and that when they went back to his place to fill out an online application on his computer that he pulled out a gun and told her to go upstairs and get undressed. (N.T. 6-28-2018, pp. 190-196).

Toni Seibert is a registered nurse who has worked for the Philadelphia Sexual Assault Response Center for the past twenty years and testified that on October 17, 2016, she examined [J.T.] and as part of that exam she took a report on what [J.T] said happened with [Harper]. (N.T. 6-29-2018, pp. 54-72). Aimee Della Porta testified that she was a social worker at the Covenant House since March of 2015, and that she spoke with both [F.V.] and [J.T.] as to the allegations concerning [Harper]. (N.T. 7-2-2018, pp. 6-12).

Detective Daniel O'Malley of the Special Victims Unit of the Philadelphia Police Department testified that he was assigned detective of [Harper's] cases, that he reviewed the reports as to both victims, including photo arrays and acknowledgments that 626 Federal Street was the place of both occurrences and that he

applied for the search warrants in these cases as well as assisted in the execution of the warrants. (N.T. 7-2-2018, pp. 37-92). Detective O'Malley testified that [Harper] and others were present when the warrants were executed, [and the police recovered] the blue steel handgun with a silver barrel and trigger loaded with nine live rounds recovered from a piece of Tupperware from the kitchen in the property; a large amount of narcotics on the kitchen table with packaging and scales, as well as in a bowl in the kitchen cabinet; and money that [Harper] attempted to hand to the landlord when the police entered the premises. (N.T. 7-2-2018, pp. 60-68).

Officer Kevin Key[s] testified that he is employed by the Philadelphia Police Department in the Narcotics Field Unit and is a stipulated expert in the field of narcotics. Officer Key[s] said he reviewed the reports concerning the confiscated 134 grams of cocaine, two baggies of heroin weighing 20.118 grams, grinders, a scale and packaging, and came to the conclusion that the drugs were possessed with the intent to deliver. (N.T. 6-29-2018, pp. 35-45).

PCRA Court Opinion, filed July 12, 2022, at 4-8.

A jury found Harper guilty in July 2018 of possession with intent to deliver and possession of a firearm without a license. However, it acquitted him of rape by forcible compulsion, involuntary deviant sexual intercourse, sexual assault, and kidnapping. Harper thereafter pled guilty to possession of a firearm prohibited. He was sentenced to an aggregate term of 10 to 20 years' incarceration followed by seven years of probation. Harper filed a post-sentence motion, which was denied. Harper appealed and we affirmed the judgment of sentence. **Commonwealth v. Harper**, No. 3468 EDA 2018, 2020 WL 5981672, at *1 (Pa.Super. 2020) (unpublished mem.).

Harper filed the instant, timely PCRA petition, his first, in February 2021. The court appointed counsel who filed an amended petition. The PCRA court

issued a Rule 907 notice of intent to dismiss the petition without a hearing. *See* Pa.R.Crim.P. 907. The court denied the petition on April 29, 2022. This timely appeal followed.

Harper raises the following issues:

1. Whether the court erred in not granting relief on the PCRA petition alleging counsel was ineffective.

2. Whether the court erred in denying [Harper's] PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA regarding trial counsel's ineffectiveness and on newly discovered evidence.

Harper's Br. at 7.

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." *Commonwealth v. Presley*, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

Within his first issue, Harper raises several ineffectiveness claims, which we address separately below. "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on [the] appellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of ineffectiveness, a petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). Prejudice in this context means that, "absent counsel's conduct, there is a reasonable

probability the outcome of the proceedings would have been different." ***Commonwealth v. Velazquez***, 216 A.3d 1146, 1149 (Pa.Super. 2019) (citation omitted). A failure to meet any of these prongs bars a petitioner from obtaining relief. ***Commonwealth v. Sneed***, 45 A.3d 1096, 1106 (Pa. 2012). Further, "[t]rial counsel cannot be held to be ineffective for failing to take futile actions or to raise a meritless claim." ***Commonwealth v. Howard***, 645 A.2d 1300, 1304 (Pa. 1994).

### *Failure to File a Motion to Suppress*

Harper first argues that trial counsel was ineffective for failing to file a motion to suppress the evidence of the narcotics and firearm found at 626 Federal Street. Harper's Br. at 15. He maintains he "sought to attack the probable cause underlying the search warrants that led to his arrest, as well as compel the officers who discovered incriminating evidence at 626 Federal Street to appear in court." ***Id.*** Harper concludes that counsel was ineffective for failing to file a motion compelling those officers to testify as to their search. ***Id.*** at 16.

Where a petitioner alleges that counsel ineffectively failed to file a suppression motion, "the inquiry is whether the failure to file the motion is itself objectively unreasonable, which requires a showing that the motion would be meritorious." ***Commonwealth v. Johnson***, 179 A.3d 1153, 1160 (Pa.Super. 2018). "Where the challenge is to a failure to move for suppression of evidence, the defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been

suppressed, there is a reasonable probability the verdict would have been more favorable." ***Commonwealth v. Melson***, 556 A.2d 836, 839 (Pa.Super. 1989).

Here, on direct appeal, this Court found that Harper himself declined to litigate a motion to suppress. Thus, we found he was precluded from claiming that a motion to suppress should have been filed. ***See Harper***, 2020 WL 5981672, at *3 (citing Trial Court Opinion, dated 11/4/19, at 11-12). We also noted that trial counsel advised Harper that he could not, in good faith, file a "four corners" suppression motion because it was frivolous. ***Id.***

Harper fails to explain how the absence of the other officers' testimony at trial prejudiced him or that anything was improper with the search at 626 Federal Street. Accordingly, Harper has failed to meet his burden and his claim of ineffectiveness fails. ***See Commonwealth v. Watley***, 153 A.3d 1034, 1044 (Pa.Super. 2016) (stating counsel will not be found ineffective for failing to file a motion to suppress if the grounds asserted for that motion lack merit).

### Failure to File Request for Franks Hearing

Harper next asserts that counsel should have filed a motion for a ***Franks*** hearing. ***See Franks v. Delaware***, 438 U.S. 154, 155-56 (1978) (holding a defendant may request a hearing to attack the validity of a warrant on the basis that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit). He contends that there was "ample confusion about [his] residence and the location of the alleged underlying sexual assaults at trial[,]" and that "Detective O'Malley put

no less than four addresses on [Harper's] warrants." Harper's Br. at 16. Harper claims that Detective O'Malley "had a reckless disregard for the truth" when he "was fixated on obtaining a warrant to 626 Federal Street." *Id.* at 17.

Harper's claim is without merit. Any alleged "confusion" about Harper's residence does not equate to a reckless disregard for the truth. Detective O'Malley testified at trial that he obtained multiple addresses for Harper by conducting numerous computer searches, including searches for "car stops and ped investigations." N.T., 7/2/18, at 48-49. He also conducted a Bureau of Motor Vehicles check on Harper and found that his driver's license was registered to 626 Federal Street in Philadelphia. *Id.* at 49. Further, one of the victims identified 626 Federal Street as the location where Harper raped her. *Id.* at 50-52. Harper has failed to make a preliminary showing that any false statement knowingly and intentionally, or with reckless disregard for the truth, was in the warrant affidavit, such that a hearing would be required. *See Franks*, 438 U.S. at 155-56. Therefore, counsel was not ineffective in failing to request a *Franks* hearing.

### Failure to File a Motion to Quash Indictment

Harper maintains that counsel was ineffective for failing to file a timely motion to quash his grand jury indictment. Harper's Br. at 17. He argues that counsel should have moved to quash the indictment and requested a preliminary hearing instead. *Id.* at 17-18.

Harper is not entitled to relief because he previously litigated this issue on direct appeal. *See* 42 Pa.C.S.A. § 9543(a)(3) (stating to be eligible for

relief, a petitioner must show "[t]hat the allegation of error has not been previously litigated or waived"). On direct appeal, this Court affirmed the trial court's finding that since there is no constitutional right to a preliminary hearing by a defendant in a criminal proceeding, Harper was not denied a constitutional right by proceeding by grand jury instead of by preliminary hearing. *See Harper*, 2020 WL 5981672, at \*3 (citing Trial Ct. Op. at 8-10).

Further, Harper has not identified any basis as to why a preliminary hearing would have been more favorable to him than a grand jury indictment. Counsel was not ineffective for failing to raise this meritless claim.

### *Failure to Investigate in Preparation for Trial*

Harper claims that trial counsel failed to adequately investigate in preparation for trial. Harper's Br. at 18. Harper's argument on this issue, in its entirety, is as follows:

> [Harper] claims that the statements of Robin Holmes, Cara Mastro, and [F.V.] taken by Detective O'Malley could have been used by trial counsel had he properly investigated. [Harper] claims that the statements of [J.T.] and Aimee Della Porta taken by Officer Cook would also have been useful to [his] defense. Additionally, [Harper] asserts that [J.T.'s] statement to Nurse Toni Seibert would have provided exculpatory information. [Harper] insists that the foregoing statements would have provided a basis for challenging the affidavits used to obtain the warrants, and ultimately [would have] led to an outcome favorable to [Harper].

*Id.*

Harper's claim is vague, conclusory, and undeveloped. He fails to articulate what the alleged statements were and how they would have aided

- 9 -

in his defense. "Boilerplate allegations have never been sufficient to discharge th[e] affirmative burden to rebut the presumption of effectiveness" of counsel. ***Commonwealth v. Simmons***, 804 A.2d 625, 639 (Pa. 2001). This claim fails.

### Failure to Call Officers Who First Discovered Evidence

Harper argues that trial counsel was ineffective for failing to call the officers who first discovered the narcotics and firearm at 626 Federal Street during the execution of the warrant. Harper's Br. at 19. He contends that these officers were present at the time of his arrest and were known to trial counsel. ***Id.*** He argues that "counsel was in the unique position to call these officers to testify and failed to do so." ***Id.***

Again, Harper has not explained how any additional testimony from these officers would have supported or aided in his case. The court did not err in rejecting this meritless claim.

### Brady Issue

Harper next argues that the Commonwealth committed a ***Brady***[1] violation when it denied him access to allegedly exculpatory police reports. ***Id.*** Specifically, he claims that he was denied access to Report No. DC-2016-25-8773 because he was indicted by a grand jury. ***Id.*** Harper argues that had "this information been disclosed to him, he would have been able to utilize the exculpatory evidence contained therein to alter the outcome of trial." ***Id.***

---

[1] ***Brady v. Maryland***, 373 U.S. 83 (1963).

Harper fails to specify the allegedly exculpatory evidence contained in the police report or how access to this information would have altered the outcome of his trial. Moreover, the Commonwealth provided Harper with all required discovery in July 2017, almost one year prior to trial. *See* Docket Entry, dated 7/24/17. Harper's *Brady* claim is without merit.

### Failure to Call Witnesses

Harper alleges that trial counsel failed to investigate and call to testify two witnesses, Janet Mancuso and Turquoise Claxton. Harper's Br. at 21. Harper claims that Mancuso was the landlord at 626 Federal Street and "could have testified as to whether [Harper] actually resided at the location at which the narcotics and firearm were found." *Id.* He contends that Claxton, his girlfriend, resided at 626 Federal Street and "may have testified that the apartment was hers, not [Harper's], contradicting the Commonwealth's claim and theory linking [Harper] to the firearm and narcotics." *Id.* Harper maintains that these two witnesses would have disputed the Commonwealth's claim that he resided at 626 Federal Street. *Id.* at 22. He concludes that "[f]ailure to investigate and call these witnesses was prejudicial because the only thing linking [him] to the firearms and narcotics was his constructive possession of them by allegedly residing at the location in which they were found." *Id.*

To establish that counsel was ineffective for failing to call a potential witness, the PCRA petitioner must demonstrate:

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009) (quoting *Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007)). "The failure to call a possible witness will not be equated with a conclusion of ineffectiveness, absent **some positive demonstration that the testimony would have been helpful to the defense**." *Commonwealth v. Jones*, 652 A.2d 386, 389 (Pa.Super. 1995) (quoting *Commonwealth v. Poindexter*, 646 A.2d 1211, 1217 (Pa.Super. 1994)) (emphasis in *Jones*). Further, "[a] failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves a matter of trial strategy." *Commonwealth v. Auker*, 681 A.2d 1305, 1319 (Pa. 1996); *see also Poindexter*, 646 A.2d at 1216 (stating that "[t]he decision whether to call a witness generally involves a matter of trial strategy").

Harper has provided nothing to show that these witnesses were available and willing to testify on his behalf. He did not produce a signed certification, affidavit, or otherwise, from either witness. *See* 42 Pa.C.S.A. § 9545(d)(1)(i) (stating "[w]here a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony"). Since

counsel is presumed to be effective, we will not deem counsel ineffective for failing to call witnesses based solely on Harper's unsubstantiated allegations regarding the witnesses' existence and willingness to testify on his behalf. ***See Commonwealth v. Lopez***, 739 A.2d 485, 496 (Pa. 1999). Harper is therefore not entitled to relief on this claim.

### *Failure to File Post-Sentence Motion Challenging Weight of Evidence*

Harper next argues that trial counsel was ineffective for failing to file a post-sentence motion challenging the weight of the evidence. Harper's Br. at 22. He contends that counsel should have filed such a motion because the evidence that his conviction rested upon was "tenuous at best." ***Id.*** at 23. He points out that he was not seen in possession of the narcotics or firearm and there was confusion about whether he resided at 626 Federal Street. ***Id.*** He further argues that the firearm found at 626 Federal Street was dissimilar to the one described by the complainant who claimed Harper assaulted her at gunpoint. ***Id.***

The PCRA court concluded that the verdict was not so contrary to the evidence as to shock one's sense of justice. PCRA Ct. Op. at 18. It found that the evidence was not tenuous, but rather strongly supported the verdict. ***Id.*** at 18-19. We agree with the PCRA court's determination that Harper's underlying claim lacks arguable merit. Additionally, Harper has not shown that there is a reasonable probability that the outcome of the proceedings would have been different if trial counsel had filed a post-sentence motion challenging the weight of the evidence. Therefore, we cannot conclude that

trial counsel was ineffective for failing to preserve a challenge to the weight of the evidence.

**Newly Discovered Evidence Claim**

Harper asserts he is entitled to post-conviction relief because of newly discovered evidence pursuant to 42 Pa.C.S.A. § 9543(a)(2)(vi). Harper's Br. at 24. Specifically, Harper contends that "a police report prepared by Officer Bruce Cleaver contains exculpatory evidence that [Harper] was unaware of due to the grand jury rules pertaining to withholding discovery from defendants." *Id.* He alleges that he "could not have obtained this information before the conclusion of the trial because it was barred to him by the grand jury rules" and the information "provides stand-alone exculpatory evidence pertaining to the narcotics at issue in this case." *Id.*

Harper's claim is undeveloped and is therefore waived. **See Commonwealth v. Thomas**, 215 A.3d 36, 51 (Pa. 2019). Even if it is not waived, it is without merit. Harper fails to explain what the alleged exculpatory evidence found in the police report is or how the information would have affected the outcome of his trial. This claim fails.

**PCRA Court's Failure to Grant an Evidentiary Hearing**

Harper's final issue is that the PCRA court erred in failing to hold an evidentiary hearing. Harper's Br. at 24. He contends he raised issues of material fact that required the court to hold a hearing. *Id.* at 25.

A PCRA hearing is not a matter of right, and the PCRA court may decline to hold a hearing if there is no genuine issue concerning any material fact and

the petitioner is not entitled to relief as a matter of law. ***See*** Pa.R.Crim.P.
907(1); ***Commonwealth v. Morrison***, 878 A.2d 102, 109 (Pa.Super. 2005)
(*en banc*).

Here, the record supports the PCRA court's findings that there were no
genuine issues of material fact and that no post-conviction relief was due to
Harper. Thus, an evidentiary hearing was not required.

Order affirmed.


*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*


Date: *8/3/2023*