910 A.2d 672

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kevin MARINELLI, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 14, 2005.

Decided Nov. 27, 2006.

Reargument Denied Jan. 24, 2007.

Billy Horatio Nolas, Esq., Philadelphia, for Kevin Marinelli.

Frank G. Fina, Esq., Amy Zapp, Esq., Jonelle Harter Eshbach, Esq., Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice NEWMAN.

Kevin Marinelli (Appellant) appeals from the March 30, 2004 Order of the Court of Common Pleas of Northumberland

County (PCRA court) denying the Petition that he filed pursuant to the Post Conviction Relief Act (PCRA).[1] In its original Opinion, the PCRA court determined that Appellant waived eight issues [2] that he had raised in his first Amended Petition because he did not raise them in his Second Amended Petition or in his post-hearing brief. After finding that the Second Amended Petition and post-hearing brief incorporated the claims by reference to the first Amended Petition, we reversed the PCRA court's determination of waiver and remanded for its consideration of the eight issues. *Commonwealth v. Marinelli*, 570 Pa. 622, 810 A.2d 1257, 1265 (2002). On remand, the PCRA court concluded that all eight claims lack merit. *Commonwealth v. Marinelli*, No. CR–94–451 (C.P. Pa. Northumberland Mar. 30, 2004) (hereinafter "PCRA ct. Op."). We now affirm.

## FACTS AND PROCEDURAL HISTORY

We recite the facts as stated by Justice, now Chief Justice, Cappy in our 1997 Opinion affirming Appellant's convictions and Judgments of Sentence. *See Commonwealth v. Marinelli*, 547 Pa. 294, 690 A.2d 203 (1997), *cert. denied*, 523 U.S. 1024, 118 S.Ct. 1309, 140 L.Ed.2d 473 (1998):

> The testimony at [A]ppellant's trial established the following facts. On the evening of April 26, 1994, [A]ppellant and his brother, Mark Marinelli (Mark), and [Thomas] Kirchoff [Kirchoff] met at [A]ppellant's apartment to plan a burglary of the residence of Conrad Dumchock (Dumchock), whom Mark knew to have stereo equipment. The three men obtained weapons, disguises, and gloves in preparation for the burglary, and proceeded to Dumchock's home in Kulpmont.
>
> Dumchock was home alone and had just spoken to his sister and brother-in-law on the telephone for forty-five minutes. The Marinelli brothers and Kirchoff arrived at Dumchock's

---

**1.** 42 Pa.C.S. §§ 9541–46.

**2.** These include one challenge to his conviction, six claims challenging his death sentence, and a request for the restoration of his direct appellate rights *nunc pro tunc*.

home and initially had difficulty gaining entry. Observing that Dumchock's car was parked outside his house and concerned about the possibility of being discovered, the threesome left Dumchock's residence but returned a few minutes later to again attempt to enter. Eventually, they broke a small window in the kitchen door and entered the residence.

Upon entering Dumchock's residence, [A]ppellant immediately proceeded to the second floor, where he encountered Dumchock. When Dumchock requested that [A]ppellant leave his home, [A]ppellant struck Dumchock's face with his gun and yelled for assistance from Mark and Kirchoff. [A]ppellant and Kirchoff continued to beat Dumchock, despite Dumchock's pleading with them to take what they wanted and leave him alone. The three rummaged through Dumchock's home looking for items to take and asking Dumchock where his guns and money were located. When Dumchock would moan or not answer, [A]ppellant would hit Dumchock again.

Mark and Kirchoff departed Dumchock's home after they had loaded the items they wished to steal, while [A]ppellant remained in the residence with Dumchock. Appellant then shot Dumchock twice in the head, with one shot into Dumchock's eye and the other directly between Dumchock's eyes. Appellant then ran out of Dumchock's house and exclaimed, "Let's get out of here!"

The threesome returned to Kirchoff's home and divided the items stolen from Dumchock. A short while later, the Marinelli brothers returned to Dumchock's house and took a motorcycle from the victim's porch. Appellant attempted to start the motorcycle on compression, with Mark following in a car. They were observed crossing the main road in Kulpmont heading toward the other side of town. When the motorcycle would not start, [A]ppellant abandoned it. On the morning following the killing, Clyde Metzger, who was waiting for Dumchock to drive him to work, entered the victim's home and discovered Dumchock's stereo equipment had been disarranged and Dumchock's dog was shaking.

Metzger called out to Dumchock but received no response. Metzger became concerned and left Dumchock's home, and headed to the police station. On his way there, Metzger encountered a Kulpmont Police Sergeant Detective Robert Muldowney, and related to him the circumstances he had found.

Sergeant Muldowney entered Dumchock's home, noting that the storm door was open, the inside door was propped open with a chair, and the glass had been broken from a window in the door. Inside the house, Sergeant Muldowney discovered that telephone cords had been cut. Upstairs, Sergeant Muldowney discovered the victim's cold body lying at the top of the stairway landing. Sergeant Muldowney noted that Dumchock's bedroom was disheveled, with drawers removed from the dresser and various items strewn on the victim's bed. Pennsylvania State Police and County Coroner Richard Ulrich were called to the scene. The victim's sister also arrived at his house and noted that Dumchock's motorcycle was missing. The motorcycle was later recovered hidden in some brush where it had been abandoned. Dumchock's brother-in-law informed police that guns, tools, and electronic equipment were also missing from Dumchock's residence. One of Dumchock's friends, David Dormer, was brought to Dumchock's residence to assist police in determining which stereo equipment, as well as liquor, was missing.

On May 25, 1994, Mark Marinelli's girlfriend, Deeann Chamberlain, turned over to Coal Township Police certain weapons which Mark had brought to her home. These weapons were later identified as having belonged to the victim. County Coroner Ulrich was at the Coal Township police station when Ms. Chamberlain turned over these weapons. The coroner connected the items with the Dumchock killing, and notified the District Attorney and State Police. Further, Ms. Chamberlain allowed Shamokin Police to come to her home and remove other items Mark had left there, including a telephone answering machine. Coroner Ulrich recognized the telephone answering machine as being

of the type reported missing from Dumchock's house, and he notified the State Police.

Additionally, a friend of [A]ppellant, Nathan Reigle, was questioned by police about the Dumchock murder. Reigle stated to police that [A]ppellant had bragged about how he had killed Dumchock. A search of [A]ppellant's residence by police recovered a number of items, including stereo equipment, later identified as property belonging to the victim. After being questioned by police, [A]ppellant gave police both an oral and a taped confession as to his involvement in the Dumchock killing.

*Id.* at 209–10.

The Commonwealth conducted a joint trial of Appellant and Kirchoff from May 8, 1995, through May 18, 1995. At the conclusion of the trial, the jury convicted Appellant of the following offenses: (1) first-degree murder;[3] (2) robbery;[4] (3) conspiracy to commit robbery;[5] (4) burglary;[6] (5) theft by unlawful taking;[7] (6) receiving stolen property;[8] and (7) aggravated assault.[9] Following a penalty hearing limited to Appellant, the jury found two aggravating circumstances and two mitigating circumstances[10] and concluded that the aggravating circumstances outweighed the mitigating circumstances. Accordingly, the trial court sentenced Appellant to

**3.** 18 Pa.C.S. § 2502(a).

**4.** 18 Pa.C.S. § 3701.

**5.** 18 Pa.C.S. § 903.

**6.** 18 Pa.C.S. § 3502.

**7.** 18 Pa.C.S. § 3921.

**8.** 18 Pa.C.S. § 3925.

**9.** 18 Pa.C.S. § 2702.

**10.** Specifically, the aggravating circumstances that the jury found were that Appellant committed the killing while in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), and that Appellant committed the offense by means of torture, 42 Pa.C.S. § 9711(d)(8). The mitigating circumstances that the jury found were that Appellant had no significant history of prior convictions, 42 Pa.C.S. § 9711(e)(1), and other evidence of mitigation concerning the character and record of Appellant, 42 Pa.C.S. § 9711(e)(8).

death.[11] On appeal, this Court affirmed Appellant's convictions and Judgments of Sentence. *Commonwealth v. Marinelli*, 547 Pa. 294, 690 A.2d 203 (1997), *cert. denied*, 523 U.S. 1024, 118 S.Ct. 1309, 140 L.Ed.2d 473 (1998). The same attorney, James J. Rosini, Esquire (Attorney Rosini) represented Appellant at trial and on direct appeal.

On April 29, 1998, Appellant timely filed a *pro se* PCRA Petition. The following day, the PCRA court appointed Robert Brett Dunham, Esquire (Attorney Dunham) of the Center for Legal Education, Advocacy and Defense Assistance, who filed an Amended Petition on October 13, 1998. Attorney Dunham subsequently ceased representation of Appellant.

Following an evidentiary hearing held January 24–27, 2000, Jerome H. Nickerson, Jr., Esquire (Attorney Nickerson) of the Defender Association of Philadelphia, filed a Second Amended PCRA Petition on behalf of Appellant on March 22, 2000. After directing the parties to file post-hearing briefs, the PCRA court ultimately denied the Second Amended Petition. In an Opinion filed May 15, 2001, the PCRA court explained that Appellant waived eight of the issues that he had raised in his first Amended Petition because he did not specifically raise them in his Second Amended Petition or in his post-hearing brief. On May 18, 2001, the Defender Association of Philadelphia substituted current PCRA counsel, Billy H. Nolas, Esquire, for the appearance of Attorney Nickerson, who withdrew on that date.

On appeal to this Court, Appellant challenged the PCRA court's determination that he waived the eight claims. We agreed with Appellant that he did not waive these issues because his Second Amended Petition and post-hearing brief actually had incorporated the claims by reference to his first Amended Petition. *Commonwealth v. Marinelli*, 570 Pa. 622, 810 A.2d 1257, 1265 (2002). Thus, we held that the PCRA

11. The trial court also sentenced Appellant to terms of imprisonment of: (1) ten to twenty years for robbery, to run consecutive to the sentence for first-degree murder; (2) five to ten years for conspiracy, to run consecutive to the sentence for robbery; and (3) ten to twenty years for burglary, to run consecutive to the sentence for conspiracy to commit robbery.

court erred by refusing to review the issues, and we remanded to the PCRA court to address those claims that were cognizable under the PCRA. *See id.* ("[T]o the extent that [Appellant] raised claims cognizable under the PCRA, these claims should have been reviewed."). As for the remainder of Appellant's claims, this Court found that they were either previously litigated or lacked merit and therefore affirmed that part of the PCRA court's Order denying relief on the basis of those issues.

On remand, the PCRA court found, as a threshold issue, that all of Appellant's claims were cognizable under the PCRA. In determining that Appellant's issues were not waived for purposes of the PCRA, the court stated:

> The issues presented by [Appellant] allege not only substantive claims, but couple the claims with ineffective assistance of counsel claims. The same attorney, James Rosini, represented [Appellant] at trial and on direct appeal[;] thus[,] the PCRA Petition is his first opportunity to allege ineffective assistance of counsel claims for the actions and inaction of his attorney. The concept of "layering" PCRA claims along with ineffective assistance of counsel presents a formidable challenge. The Supreme Court has recently attempted to clear up this area of the law, which has been a "source of disagreement and confusion", in the case of *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1021 (2003). But, the *McGill* decision was handed down over six months after PCRA counsel's brief due [sic] to this Court, leaving [Appellant] and the Commonwealth to navigate the area without solid guidance. Considering the murky nature of the law surrounding "layered" PCRA claims, this court finds the reasoning presented by the Supreme Court in various case holdings allows this Court to consider the merits of [Appellant]'s claims as long as such claims allege that prior counsel's ineffective assistance resulted in the issue not being previously raised. *See Commonwealth v. Chmiel,* 536 Pa. 244, 639 A.2d 9, 12 (1994); *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293 (1999); *Commonwealth v. Miller,* 560 Pa. 500, 746 A.2d 592 (2000); *Commonwealth v. Marre-*

*ro,* 561 Pa. 100, 748 A.2d 202 (2000); *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517 (2001).

PCRA ct. Op. at 3 (unnumbered) (citations modified). Nevertheless, the PCRA court found that all eight issues were meritless and therefore denied Appellant relief. Appellant now appeals from this Order.

## DISCUSSION

In Part II of his Brief, Appellant presents the eight claims that we remanded to the PCRA court,[12] namely:

(1) Should Appellant's death sentence be vacated because he was denied an impartial sentencing jury and, as a result, consideration of mitigating evidence was restricted?

(2) Is Appellant entitled to a new sentencing because the penalty phase instructions shifted the burden of persuasion from the Commonwealth to Appellant and violated the presumption of life afforded defendants in capital sentencing procedures?

**12.** In Part III of his Brief, Appellant raises six so-called "Preserved Claims," which "were already decided by this Court" but were included in the brief "to avoid any suggestion he has waived them." (Brief of Appellant at v-vi, 49–91). In particular, Appellant argues that: (1) the redaction of Kirchoff's incriminating statement was constitutionally inadequate; (2) the trial court's torture instruction was unconstitutionally vague and overbroad; (3) the expert testimony of forensic pathologist Isadore Mihalakis, M.D., which the Commonwealth presented, was unscientific, unreliable, and misleading; (4) the Commonwealth violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny; (5) trial counsel was ineffective for failing to investigate, develop, and present mitigating evidence; and (6) the police violated Appellant's right to counsel when they interrogated him in the absence of counsel.

We considered the merits of each of these claims on either direct or collateral review of Appellant's convictions and Judgments of Sentence. *See Commonwealth v. Marinelli,* 690 A.2d at 220–21 (Pa.1997) (denying first claim on its merits); *id.* (second claim); *Commonwealth v. Marinelli,* 570 Pa. 622, 810 A.2d 1257, 1266–70 (2002) (third claim); *id.* at 1270–74 (fourth claim); *id.* at 1274–77 (fifth claim); *Marinelli,* 690 A.2d at 215–16 (sixth claim). Therefore, by Appellant's own concession, these claims are previously litigated. *See* 42 Pa.C.S. § 9544(a)(2). Appellant is thus not entitled to relief on these six claims.

(3) Is Appellant entitled to a new trial because Juror Clara Iwanski was a former client of Assistant District Attorney Rosini?

(4) Must Appellant's death sentence be vacated because the sentencing jury was never instructed that, if sentenced to life, he would be statutorily ineligible for parole?

(5) Was counsel ineffective in misapprising Appellant of his right to testify to personal background mitigating circumstances without being subject to cross-examination of the circumstances of the offense, and was Appellant's waiver of his right to testify in mitigation invalid?

(6) Did the trial court fail to properly instruct on the nature and use of aggravating and mitigating factors?

(7) Is Appellant entitled to the production of the remaining voir dire transcripts and restoration of his right to direct appeal, *nunc pro tunc,* because these notes of testimony of the voir dire proceedings were and remain unavailable to him?

(8) Must Appellant's death sentence be vacated because this Court failed to provide meaningful proportionality review?

(Brief of Appellant at iv-v).

As the Commonwealth points out, Claims 1–4, 6, and 7 all could have been raised on direct appeal but were not. Therefore, Appellant effectively has waived his right to collateral review of these assertions of trial court error. *See* 42 Pa.C.S. § 9543(a)(3) ("To be eligible for relief ... the petitioner must plead and prove by a preponderance of the evidence ... [t]hat the allegation of error has not been ... waived."); 42 Pa.C.S. § 9544(b) (defining an issue as waived for purposes of the PCRA if, *inter alia,* the petitioner could have raised it on appeal but failed to do so).

Noting, however, that "[t]he issues presented by [Appellant] allege not only substantive claims, but couple the claims with ineffective assistance of counsel claims," PCRA ct. Op. at 2–3, the PCRA court proceeded to review Claims 1–4, 6, and 7 on their merits. In his Brief to this Court, Appellant does

append to his discussion of each claim a brief paragraph, at most, asserting that counsel was ineffective for failing to raise, either at trial or on direct appeal, the issues discussed in the claim. With respect to none of these claims, however, does Appellant offer more than a conclusory assertion of trial court error, trial counsel's lack of a reasonable basis for failing to object at trial or on direct appeal, and resultant prejudice.[13] Pursuant to our current jurisprudence, such boilerplate allegations do not suffice as the kind of meaningful application of the ineffectiveness standard that is required to allow for effective substantive review of such claims. *See Commonwealth v. Abdul-Salaam*, 570 Pa. 79, 808 A.2d 558, 560 n. 3 (2001); *Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 940 n. 4 (2001); *see also Commonwealth v. Simmons*, 569 Pa. 405, 804 A.2d 625, 639 (2001) ("Boilerplate allegations have never been sufficient to discharge [the appellant's] affirmative burden to rebut the presumption of effectiveness."); *accord Commonwealth v. Bond*, 572 Pa. 588, 819 A.2d 33, 39–40 (2002); *Commonwealth v. Lambert*, 568 Pa. 346, 797 A.2d 232, 245 (2001).

Nevertheless, Appellant filed his Second Amended PCRA Petition at a time when the degree of specificity required to achieve substantive review of an ineffectiveness claim was still unsettled. Therefore, we will proceed to review all eight

13. While the PCRA court opted to excuse Appellant's failure to sufficiently develop his ineffectiveness claims on the basis that this Court's decision in *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003), was not issued until after his brief was due to that court, *McGill* is inapplicable to the instant case. *McGill* clarified what level of argument is necessary in cases that require the appellant to "layer" his ineffectiveness claims. Appellant, however, could not possibly plead a layered claim. Notwithstanding his representation by more than three attorneys, there are only two "layers" of counsel within the meaning of *McGill:* (1) Attorney Rosini, who represented Appellant at trial and on direct appeal; and (2) the Defender Association of Philadelphia, which filed both the Second Amended Petition and the Brief *sub judice* of Appellant. *See Commonwealth v. Johnson*, 565 Pa. 51, 771 A.2d 751, 757 n. 7 (2001) (noting that a public defender generally may not argue the ineffectiveness of another member of the same public defender's office); *Commonwealth v. Ciptak*, 542 Pa. 112, 665 A.2d 1161, 1161–62 (1995) (same).

claims now before us on their merits in the order in which Appellant presents them.

■ To merit relief based on a claim alleging ineffective assistance of counsel, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). We have interpreted this standard to require a petitioner to prove that: (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused him prejudice. *Commonwealth v. Todaro*, 549 Pa. 545, 701 A.2d 1343, 1346 (1997). Counsel will not be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 203 (1997).

We begin our discussion of each claim as does Appellant, presenting the underlying claim directly, typically without couching it in terms of ineffective assistance. Because we find that each claim lacks arguable merit, we conclude our analysis of each issue at that point.

### 1. Age Mitigator

Appellant first argues that his death sentence should be vacated because the jury failed to find the mitigating circumstance of 42 Pa.C.S. § 9711(e)(4) based on "[t]he age of the defendant at the time of the crime." According to Appellant, the jury was required to find this mitigating circumstance because the Commonwealth stipulated to it during the sentencing hearing. (Brief of Appellant at 11) (citing *Commonwealth v. Rizzuto*, 566 Pa. 40, 777 A.2d 1069 (2001)).[14]

---

**14.** Appellant additionally argues that the jury was improperly impaneled as a result of voir dire questions from the prosecutor suggesting that prospective jurors should not be "influenced by 'outside influences' such as feelings of sympathy or mercy arising from mitigating evidence present in the case (in particular, Appellant's youthful age), and elicit[ing] promises from veniremembers who were selected as jurors that they would set aside such sympathy and mercy." (Brief of Appellant at 15). Although Appellant refers to additional facts from the record to support this argument as to improper paneling, he fails to distinguish it from his overall legal claim. In fact, he relies on *Rizzuto* throughout

■ We have previously rejected the notion that a defendant's youthful age at the time of the crime automatically renders the age mitigator applicable. *Commonwealth v. Williams*, 524 Pa. 218, 570 A.2d 75, 82 (1990). Instead, it is for the jury to decide whether a particular defendant was so young or immature at the time of the crime as to justify considering his age as a mitigating factor. *Commonwealth v. Henry*, 524 Pa. 135, 569 A.2d 929, 939 (1990), *abrogated on other grounds by Commonwealth v. Wilson*, 580 Pa. 439, 861 A.2d 919 (2004).

■ With this distinction in mind, the PCRA court found that "[t]he Commonwealth stipulated only to the birth date of [Appellant], not to the fact that his age and/or immaturity played a role in the commission of the crime." (PCRA ct. Op. at 4). The Commonwealth asserts that the record *sub judice* clearly supports this finding.

Nevertheless, our review of the record leads us to conclude that the Commonwealth did indeed stipulate to this mitigating circumstance. During the sentencing hearing, the prosecutor stated the following in open court:

> May it please the Court, at this time, I would like to put on the record a stipulation entered into by the Commonwealth and the defense concerning two of the items listed in the— by the Court **as mitigating circumstances;** Number One, that the defendant has no significant history of prior criminal convictions; and Number Two, that under the category age of the defendant, at the time of the crime, that he was born April 30th, 1972, and was 21 years old at the time of the crime.

(Notes of Testimony (N.T.), 5/19/95, at 913 (emphasis added)). Later, during the Commonwealth's penalty phase closing argument, the prosecutor stated the following to the jury:

his discussion of the argument, and he fails to specify why his counsel was ineffective for failing to raise it previously. Consequently, Appellant's failure to apply the three prongs of the test for ineffectiveness to this argument precludes us from meaningfully reviewing it as distinct from his *Rizzuto* claim. *See Todaro*, 701 A.2d at 1346.

698

> **Mr. Rosini, counsel for [Appellant], has offered to you three mitigating circumstances. And the Commonwealth doesn't contest them.** It's not for me and I don't have to show you that they don't exist. I agree that when this individual—when this crime was committed he was 21 years old. His birthday was April 30th. Conrad [Dumchock] died April 27th. He was three days from the age of 22 if that makes a difference.
>
> We also agree that there is no significant criminal history. And that is a mitigating factor. And Mr. Joseph Marinelli, his brother, came on as a third mitigating factor that Mr. Kevin Marinelli had a rough childhood, that he came from a broken home. . . .

* * *

> I submit we have proven two aggravating circumstances beyond a reasonable doubt. And **I will give them their mitigating circumstances, all three of them.**

(*Id.* at 936–38 (emphasis added)). While we do discern a certain degree of ambiguity as to exactly what the prosecutor meant by the first of the two above-quoted remarks, we find that there is sufficient support in the record as a whole to conclude that the Commonwealth stipulated to the mitigating circumstance of 42 Pa.C.S. § 9711(e)(4). Although, taken in isolation, certain portions of the above statements suggest that the Commonwealth was stipulating merely that Appellant was twenty-one years old when he killed Dumchock (*see, e.g.,* N.T. at 936 ("I agree that . . . when this crime was committed he was 21 years old.")), the context of the statements convinces us that the Commonwealth stipulated to three mitigating circumstances, including that based on the age of the defendant at the time of the crime.

█ Nevertheless, Appellant cannot prevail on this claim for the simple reason that, pursuant to the law existing at the time of his sentencing, the jury was not required to find a mitigating circumstance to which the Commonwealth had stipulated. *See Commonwealth v. Copenhefer,* 526 Pa. 555, 587 A.2d 1353 (1991), *abrogated by Commonwealth v. Rizzuto,* 566

Pa. 40, 777 A.2d 1069 (2001). Although Appellant correctly cites *Commonwealth v. Rizzuto* for the proposition that "where a mitigating circumstance is presented to the jury by stipulation, the jury is required by law to find that mitigating factor," *Rizzuto*, 777 A.2d at 1089, we did not decide *Rizzuto* until more than six years after Appellant's sentencing. As *Rizzuto* expressly overruled *Copenhefer*, trial counsel for Appellant may not be found ineffective for failing to predict such a change in the law. *Commonwealth v. Tilley*, 566 Pa. 312, 780 A.2d 649, 653 (2001); *Commonwealth v. Johnson*, 572 Pa. 283, 815 A.2d 563, 582 (2002) (applying *Tilley* in rejecting appellant's reliance on *Rizzuto* in challenging his 1997 sentencing).

## 2. Penalty Phase Jury Instructions

■ Appellant next argues that his death sentence should be vacated because the trial court's penalty phase instructions to the jury "unconstitutionally shifted the burden of persuasion from the Commonwealth to Appellant and violated the presumption of life afforded defendants in capital sentencing proceedings." (Brief of Appellant at 21). In support of this claim, Appellant cites a single, three-sentence excerpt from the trial court's penalty phase instructions, which span fourteen pages of the notes of testimony.

During its penalty phase instructions, the trial court provided specific directions to the jury as to how to record its verdict and findings on the sentencing verdict slip. Appellant cites the following excerpt from those specific directions:

> If your sentence is life imprisonment you check the findings of either C1 or C2, **which explains why you are rejecting the death penalty** and imposing a life sentence.... **If the reason for rejecting the death penalty** is that all of you find no aggravating circumstances, check C1. **If the reason for rejecting death** is that although all of you agree on at least one aggravating circumstance, one or more of you find that the mitigating are not outweighed by the aggravating circumstances, then check C2.

(Brief of Appellant at 22 (quoting N.T., 5/19/95, at 964)). According to Appellant, the trial court's use of the word "reject" both "suggested that a death sentence is the rule and a life sentence is the exception" and "requir[ed] the defendant to rebut a presumption of death resulting from findings of enumerated aggravating circumstances." (*Id.*).

 Our standard of review of penalty phase jury instructions is no different from that which guides us in reviewing a jury charge given during the guilt phase of a trial:

> In reviewing a challenge to a jury instruction the entire charge is considered, not merely discrete portions thereof. *Commonwealth v. Stokes,* 532 Pa. 242, 615 A.2d 704, 708 (1992). The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury. *Commonwealth v. Faulkner,* 528 Pa. 57, 595 A.2d 28 (1991).

*Commonwealth v. Laird,* 555 Pa. 629, 726 A.2d 346, 360 (1999); *accord Commonwealth v. King,* 554 Pa. 331, 721 A.2d 763, 779 (1998).

When viewed in their entirety, the trial court's penalty phase instructions clearly and accurately explained the respective burdens of proof of Appellant and the Commonwealth as well as the presumption of life to which Appellant was entitled. The trial court began its sentencing charge to the jury as follows:

> Members of the jury, you must now decide whether to sentence the defendant to death or life imprisonment. Your sentence will depend upon what you find about aggravating and mitigating circumstances. The sentencing code defines aggravating and mitigating circumstances. They are things that make a First Degree Murder case either more terrible or else less terrible. Your verdict must be a sentence of death if you unanimously find, that is, all of you find at least one aggravating and no mitigating circumstances, or if you unanimously find one or more aggravating circumstances which outweighs as to quality, not quantity, any mitigating circumstances. If you do not all agree on one or the other

of these findings, then the only verdict that you may return is a sentence of life imprisonment.

The Commonwealth must prove any aggravating circumstances beyond a reasonable doubt. This does not mean that the Commonwealth must prove the aggravating circumstances beyond all doubt or to a mathematical certainty. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his own affairs. . . .

By contrast, the defendant must prove any mitigating circumstances. However, he only has to prove mitigating circumstances by a preponderance of the evidence, that is by the greater weight of the evidence. This is a lesser standard than that of beyond a reasonable doubt. And I will define it for you.

(N.T., 5/19/95, at 952–53). After accurately defining "preponderance of the evidence" (*id.* at 953–54),the trial court proceeded to enumerate and separately define each of the aggravating and mitigating circumstances at issue in the case (*id.* at 954–57). Next, the trial court provided its specific directions to guide the jury in recording its verdict and findings on the sentencing verdict slip. In this context, the trial court instructed the jury as follows:

As I told you earlier, you must agree unanimously on one of two general findings before you can sentence the defendant to death. They are a finding that there is at least one aggravating circumstance and no mitigating circumstance, or a finding that there are one or more aggravating circumstances which outweigh any mitigating circumstances.

In deciding whether aggravating outweigh mitigating circumstances, do not simply count their number. Compare the seriousness and importance of the aggravating with the mitigating circumstances. If you all agree on either one of the two general findings then you can and must sentence the defendant to death.

When voting on the general findings, you are to regard a particular aggravating circumstance as present only if you all agree that it is present. On the other hand, each of you

is free to regard a particular mitigating circumstance as present despite what other jurors may believe. This is a difference between aggravating and mitigating findings. And I'll repeat it.... This different treatment of aggravating and mitigating circumstances is one of the law's safeguards against unjust death sentences. It gives the defendant a full benefit of any mitigating circumstances.

It is closely related to the burden of proof requirements. Remember, the Commonwealth must prove any aggravating circumstance beyond a reasonable doubt while the defendant only has to prove any mitigating circumstance by a preponderance of the evidence.

(*Id.* at 957–58). The trial court then proceeded to read aloud the instructions as printed on the verdict slip, which, *inter alia,* explained the distinct burdens of proof and degrees of consensus required with respect to aggravating and mitigating circumstances. (*Id.* at 959–63). Finally, the trial court clarified the verdict slip instructions as follows:

Members of the jury, I'm sure that this instruction seems very confusing and it is very complex, but I believe that when you deliberate and you go over it and review it, it will become self-explanatory. I will just repeat that under part two, which is your findings and your verdict, before you can sentence the defendant to death, you must all agree on a general finding in either B1 or B2. If you all agree on the aggravating circumstances and all agree that there are no mitigating circumstances then check B1....

If you all agree on one or more aggravating circumstances, and although one or more of you find mitigating circumstances, you must all agree that the aggravating outweigh the mitigating circumstances, then check B2....

If your sentence is life imprisonment, you check the findings of either C1 or C2, which explains why you are rejecting the death penalty and imposing a life sentence.... If the reason for rejecting the death penalty is that all of you find no aggravating circumstances, check C1. If the reason for rejecting death is that although all of you agree on at least one aggravating circumstance, one or more of you find that

the mitigating are not outweighed by the aggravating circumstances, then check C2.

(*Id.* at 963–64).

Thus, the three-sentence excerpt upon which Appellant relies appears in the context of the trial court's repeated emphasis on the more exacting requirements that the Commonwealth faced in attempting to prove its two aggravating circumstances, compared to the relatively lenient standards applicable to Appellant with respect to his two mitigating circumstances. Accordingly, Appellant's claim that the trial court's use of the word "reject" rendered its penalty phase instructions erroneous lacks arguable merit, and counsel for Appellant cannot be found ineffective for failing to raise it. *Commonwealth v. Hall,* 549 Pa. 269, 701 A.2d 190, 203 (1997).

### 3. Juror Impartiality

██ Appellant next argues that he is entitled to a new trial because a juror, Clara Iwanski (Iwanski) was a former client of the Assistant District Attorney (ADA) who represented the Commonwealth in the case *sub judice* and "consequently was not fair and impartial." (Brief of Appellant at 25). Appellant further asserts that he was denied his right to an impartial jury because the trial court "precluded [his counsel] from inquiring further into the relationship." (*Id.*).

After reviewing the record of voir dire, the PCRA court deemed the instant claim to be without merit, reasoning as follows:

The [trial c]ourt, both defense counsels . . . and the prosecution adequately questioned Juror Iwanski. The [c]ourt specifically asked Juror Iwanski if the fact that [the ADA] had handled a civil matter for her would influence her in any way, to which she answered "I would say not". (N.T., 5/11/95, at 418). Juror Iwanski was also repeatedly asked by the court and defense counsels if she could render a verdict based only upon evidence presented at trial. (N.T., 5/11/95, at 416–39). Juror Iwanski repeatedly answered questions on her ability to be fair, impartial and base her decision only upon evidence heard at trial, always affirming

her ability to act in accordance with the duties of a juror. (*Id.*)

(PCRA ct. Op. at 7 (citations modified)).

Our own review of the voir dire record finds ample support for the findings of the PCRA court. Iwanski stated that the ADA's representation of her was brief, that he no longer represented her, and that she did not know him socially. (N.T., 5/11/95, at 418, 424). Moreover, Appellant fails to provide any corroboration of his bald allegation that Iwanski did not serve fairly and impartially, nor does he cite any authority pursuant to which we must presume partiality based on such a brief professional relationship. Accordingly, the instant claim lacks arguable merit, and counsel for Appellant cannot be found ineffective for failing to raise it. *Hall,* 701 A.2d at 203.

### 4. Lack of Simmons Instruction

▆ Appellant next argues that his death sentence should be vacated because the trial court failed to include in its sentencing charge the instruction that, in Pennsylvania, a defendant who receives a life sentence for first-degree murder is statutorily ineligible for parole. *See Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). According to Appellant, the absence of a *Simmons* instruction violated his constitutional rights to, *inter alia,* due process and an impartial jury capable of making a reasoned moral judgment.

In *Simmons,* the United States Supreme Court recognized that a state "may not create a false dilemma by advancing generalized arguments regarding the defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant never will be released on parole." *Id.* at 171, 114 S.Ct. 2187. Therefore, the *Simmons* Court held that, where the state puts the future dangerousness of the defendant into issue, due process requires that the defendant be entitled to inform the jury that he or she is ineligible for parole. *Id.* In Pennsylvania, however, where future dangerousness is not expressly indicated, instructions detailing

the character of a life sentence are not required. *Commonwealth v. King*, 554 Pa. 331, 721 A.2d 763, 779 (1998) (citing *Commonwealth v. May*, 551 Pa. 286, 710 A.2d 44, 47 (1998)).

Appellant presently argues that the prosecutor put future dangerousness at issue by such conduct as "eliciting testimony that [Appellant] **became** a[sic] 'more aggressive' while in the military" (Brief of Appellant at 27) (quoting N.T., 5/16/95, at 479–83, 498–99) (emphasis added), and by "assert[ing] that Appellant **was** the ringleader in the offense," which the prosecutor "repeatedly described . . . as a 'military like operation'" (*id.* at 27–28) (quoting N.T., 5/12/95–5/18/95, at 45, 48–49, 412–13, 418, 538, 600, 794–95, 802–03) (emphasis added). Nevertheless, we have continually made clear that a prosecutor does not implicate *Simmons* merely by making reference to the defendant's violent past. *King*, 721 A.2d at 779 (citing *May*, 710 A.2d at 47).

In the instant case, as the PCRA court found, "the prosecution never argued, either directly or by implication . . . that [Appellant] would present a future threat to society." (PCRA ct. Op. at 9). Therefore, *Simmons* was not applicable to the case *sub judice*, and counsel for Appellant cannot be found ineffective for failing to argue otherwise. *Hall*, 701 A.2d at 203.

### 5. *Advice of Counsel*

Appellant next argues that his counsel was ineffective for improperly advising Appellant that he would be subject to cross-examination on the circumstances of the offense if he testified about his life history at his penalty hearing. Appellant claims that he based his decision to waive his right to testify at the penalty phase of his trial upon this misinformation and that, therefore, his waiver was neither voluntarily nor knowingly given. Although this claim is properly before this Court, as it is neither waived nor previously litigated, it nonetheless fails on its merits.

In support of the instant claim, Appellant cites the following statement of trial counsel upon concluding his presentation at the penalty phase of Appellant's trial:

[Counsel for Appellant]: [C]oncerning [Appellant]'s right to take the stand during the sentencing phase. I have discussed it with him. I have explained to him that if he takes the stand, the District Attorney has the right of cross-examination. It was my opinion that during cross-examination the District Attorney, quite probably, would get into going over much of the evidence from the guilt phase of the trial and asking questions concerning it, and that he could ask him questions at this point concerning his guilt. I have explained to him that in my opinion no—that the [c]ourt has already instructed the jury, and I don't know if you instruct the jury at this point or not, but we would request that no adverse inference can be taken from his failure to take the stand.

[Trial court]: That would be included in my instructions.

[Counsel for Appellant]: And, frankly, I have also expressed to him what I feel are appealable issues from the trial itself, for him to consider. And he has expressed to me that under those circumstances, that he did not want to get on the stand at this time and make any statements concerning his involvement or lack of involvement in the offense.

(N.T., 5/19/95, at 920–21).

As the PCRA court noted, a defendant who testifies during the penalty phase of his capital trial is subject to all relevant cross-examination by the prosecution. *See, e.g., Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846, 857 (1989) ("We reject the suggestion that cross-examination of a defendant at the penalty hearing of a capital case is improper."). Appellant argues, however, that case law makes clear that a defendant who testifies at his penalty hearing about his life history does not **ever** open the door to cross-examination about the circumstances of the homicide. (Brief of Appellant at 35–36). In support of this contention, Appellant cites *Commonwealth v. Percell,* 499 Pa. 589, 454 A.2d 542 (1982); *Commonwealth v. Luther,* 317 Pa.Super. 41, 463 A.2d 1073 (1983); and *Lesko v. Lehman,* 925 F.2d 1527 (3d Cir.1991).

As the Commonwealth notes and the PCRA court found, these cases simply do not advance Appellant's argument in any way. *Percell* involved an appeal from a voluntary manslaughter conviction where, during trial, the defendant took the stand and was improperly cross-examined by the prosecution about a non-*crimen falsi* criminal conviction and prior criminal charges that did not result in convictions. As the Commonwealth states, "[i]n no manner does this case stand for, or even address, the asserted proposition that a defendant presenting mitigating evidence during a penalty phase cannot be subject to cross-examination about the circumstances of the crime." (Brief of Appellee at 37). At the same time, *Luther* involved an appeal by a defendant who had been convicted of rape and who alleged that counsel had been ineffective for failing to present character evidence on behalf of the defendant. As the PCRA court observed, *Luther* has no bearing on the case at bar.

While *Lesko* does involve a defendant who testified during the penalty phase of his capital murder trial, *Lesko* actually states that when a defendant testifies about his biographical background at the penalty phase of his trial, he cannot "claim a fifth amendment privilege against cross-examination or prosecutorial comment on matters reasonably related to his credibility or the subject matter of his testimony." *Lesko*, 925 F.2d at 1542. The same is true in the context of the instant claim. Contrary to Appellant's position, there is no blanket rule that a prosecutor can never cross-examine a defendant about the circumstances of the offense when that defendant takes the stand at the penalty phase of his trial to offer mitigation testimony. Rather, the scope of permissible cross-examination will necessarily depend on the testimony of the defendant and what, in the discretion of the trial court, becomes relevant by virtue of that testimony.

Thus, we agree with the PCRA court that counsel was not ineffective for advising Appellant that if he took the stand at the penalty hearing the prosecutor was entitled to cross-examine him and that such cross-examination might include questions regarding the circumstances of the murder. As

▮▮▮▮

counsel will not be deemed ineffective for failing to raise a meritless claim, *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 203 (1997), Appellant is not entitled to relief on this issue.

### 6. Instructions on Aggravating and Mitigating Circumstances

▮▮ Appellant next claims that the trial court failed to instruct the jury properly as to the nature and use of aggravating and mitigating circumstances. Specifically, according to Appellant, the trial court's description of those circumstances as " 'mak[ing] a first degree murder case either more terrible or less terrible' diverted the focus of the jury's life or death deliberation from a reasoned determination as to the defendant's personal culpability to an amorphous and unguided consideration of how 'terrible' 'the case' was." (Brief of Appellant at 40).

The excerpt that serves as the basis for the instant claim reads as follows:

> The sentencing that you impose will depend on whether you find any of the things that the Pennsylvania Sentencing Code calls aggravating or mitigating circumstances. Aggravating circumstances are things about the killing and the killer which make a First Degree Murder case more terrible and deserving of the death penalty. Mitigating circumstances are those things that make the case less terrible and less deserving of death.

(*Id.* at 39–40 (quoting N.T., 5/19/95, at 905–906); *see also id.* at 40 (quoting N.T., 5/19/95, at 952 for a similar excerpt from the trial court's closing charge)).

As we noted in discussing Appellant's other penalty phase instruction claim, our standard of review of penalty phase jury instructions is no different from that which guides us in reviewing a jury charge given during the guilt phase of a trial. In particular, we recall that "[a] trial court has broad discretion in phrasing its instructions to the jury and can choose its own wording so long as the law is clearly, adequately and accurately presented to the jury for consideration." *Commonwealth v. King*, 554 Pa. 331, 721 A.2d 763, 778 (1998) (citing

*Commonwealth v. Hawkins,* 549 Pa. 352, 701 A.2d 492, 511 (1997)).

In *Commonwealth v. Stevens,* 559 Pa. 171, 739 A.2d 507, 527 (1999), we deemed meritless a similar challenge based on a portion of penalty phase instructions that is materially identical to that upon which Appellant relies. As we stated in *Stevens,* the trial court's explanation of aggravators and mitigators as aspects of the killing and the killer that make a first-degree "case" either more or less "terrible" appropriately "expressed to the jury, in laymen's terms, the purpose for the distinction between aggravating and mitigating circumstances in a capital penalty phase." *Id.* Although we decided *Stevens* subsequent to Appellant's sentencing, Appellant fails to cite any earlier authority holding that explaining aggravating and mitigating circumstances in these terms constitutes reversible error. Therefore, the underlying claim of the instant issue lacks merit, and counsel cannot be deemed ineffective for failing to raise it. *Hall,* 701 A.2d at 203.

### 7. Request for Restoration of Right to Direct Appeal

Appellant next requests the restoration of his direct appellate rights *nunc pro tunc,* alleging that the notes of testimony of May 8, 1995, the first day of voir dire proceedings, "were and remain [15] unavailable to him." (Brief of Appellant at 42). Consequently, according to Appellant, he has been denied his right to meaningful direct review of "claims that may be disclosed by the missing transcript." (*Id.* at 43).

To ensure the right of a criminal defendant to meaningful appellate review, we require "that he or she be furnished a full transcript or other equivalent picture of the trial proceedings." *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 701 (1998) (quoting *Commonwealth v. Shields,* 477 Pa. 105, 383 A.2d 844, 846 (1978)). Nevertheless, "[t]o be entitled to relief due to the incompleteness of the trial record

15. As we explain below, the record contradicts Appellant's unsupported allegation that he continues to lack access to the transcript of May 8, 1995.

the defendant must make some potentially meritorious challenge which cannot be adequately reviewed due to the deficiency in the transcript." *Id.*

In the instant case, the closest approximation to a "potentially meritorious challenge" based on the portion of the voir dire transcript at issue is Appellant's mere speculative statement, appearing in a footnote, that "[c]ounsel has ... identified error from the voir dire transcripts ths [sic] far provided, creating a likelihood that the missing ones will show similar error." (Brief of Appellant at 43 n.53). Such a conclusory allegation is utterly insufficient to "raise a colorable question of whether due process was violated" by the alleged unavailability of the notes of a particular day's testimony. *Albrecht,* 720 A.2d at 701 (rejecting appellant's "bald[ ] assert[ion] that there may have been some improper questions on cross-examination which the trial court failed to remedy"); *see also Commonwealth v. Blystone,* 555 Pa. 565, 725 A.2d 1197, 1201 n. 9 (1999) (denying request for restoration of right to direct appeal in light of appellant's "fail[ure] to present any specific evidence to demonstrate that there may be a cognizable claim contained within the untranscribed voir dire proceedings").[16] Thus, the underlying claim of the instant issue lacks merit, and counsel cannot be deemed ineffective for failing to raise it. *Commonwealth v. Hall,* 549 Pa. 269, 701 A.2d 190, 203 (1997).

### 8. *Proportionality Review*

Finally, Appellant argues that his death sentence must be vacated because this Court failed to provide meaningful proportionality review. We have consistently held that such a claim is previously litigated where the Court conducted proportionality review on direct appeal.[17] *Commonwealth v.*

16. The certified record shows that the "[t]ranscript of [t]he [p]roceedings beginning and concluding on May 8, 1995" were filed on December 8, 1999 (Certified Record, Northumberland County Court of Common Pleas Docket, Entry No. 109), more than three months before Appellant filed his Second Amended PCRA Petition and over five years before he filed the Brief *sub judice.* Therefore, the initial unavailability of the notes of testimony from May 8, 1995 does not explain Appellant's present failure to allege specific claims of error occurring on that date.

17. Appellant actually concedes as much in his Brief to this Court. (*See* Brief of Appellant at 8 ("The lower court held that [this c]laim is

*Brown,* 582 Pa. 461, 872 A.2d 1139, 1157 (2005) (citing *Commonwealth v. Edmiston,* 578 Pa. 284, 851 A.2d 883, 900 (2004), *Commonwealth v. Wharton,* 571 Pa. 85, 811 A.2d 978, 991 (2002), and *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 708 (1998)); *see also* 42 Pa.C.S. § 9544(a)(2) (defining a claim as having been previously litigated for purposes of the PCRA if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue"). On direct review of Appellant's conviction and death sentence, we performed an independent review of this case because it involved a death sentence imposed before June 25, 1997, the effective date of the act that repealed the statutory requirement of proportionality review. *See Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426, 440 (1997) (holding that Act of June 25, 1997, No. 28, does not apply retroactively), *abrogated on other grounds by Commonwealth v. Burke,* 566 Pa. 402, 781 A.2d 1136 (2001); *Commonwealth v. Watkins,* 577 Pa. 194, 843 A.2d 1203, 1219 n. 18 (2003). We ultimately determined that Appellant's sentence of death was proportional to the sentences imposed in similar cases. *See Commonwealth v. Marinelli,* 547 Pa. 294, 690 A.2d 203, 221–22 (1997). Therefore, Appellant is ineligible for relief on this claim.

## CONCLUSION

For the foregoing reasons, Appellant has failed to demonstrate eligibility for relief pursuant to the PCRA. Accordingly, we affirm the Order of the PCRA court denying Appellant relief on his Second Amended Petition.[18]

Justice EAKIN and Justice BALDWIN join the opinion announcing the judgment of the Court.

'previously litigated.' Under this Court's precedent, the lower court is right. [Appellant] nevertheless presents [this c]laim here to preserve it and urges this Court to consider it.") (internal citation omitted)).

18. The Prothonotary of the Supreme Court is directed to transmit a full and complete record of these proceedings to the Governor in accordance with 42 Pa.C.S. § 9711(i).

712

Chief Justice CAPPY files a concurring opinion in which Justice BAER joins.

Justice SAYLOR files a concurring opinion.

Justice CASTILLE concurs in the result.

Chief Justice CAPPY, concurring.

I join the result of the majority opinion. Furthermore, I join the majority opinion in its analysis of claim number 8, related to proportionality review. I also join the substantive analysis of claim number 7, related to the notes of testimony from the *voir dire* proceedings, as I do not believe it is waived.[1] I join Justice Saylor's concurring opinion with regard to claim 5. I join only the result reached by the majority opinion with regard to the remaining claims for the following reason.

The majority implies that claims number 1–4, and 6 are waived. Nevertheless, the majority addresses the claims on the merits because "Appellant filed his Second Amended PCRA Petition at a time when the degree of specificity required to achieve substantive review of an ineffectiveness claim was still unsettled." Majority opinion at 695, 910 A.2d at 679–80. Respectfully, I disagree that an alternative analysis is proper in this case, because the standards governing ineffectiveness claims have been settled since 1987. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987)

While we have acknowledged that our recent jurisprudence has been confusing regarding pleading "layered" claims of ineffectiveness, the instant case does not involve a layered claim. *See* Majority opinion at 695 and n.13, 910 A.2d at 679–

---

1. The majority includes claim number 7 in this list of waived claims, but I respectfully disagree. In my opinion, regarding claim number 7, Appellant is challenging the fact that he did not have access to the relevant *voir dire* transcript at trial and that he still does not have access to that document which has prevented him from raising a meaningful claim. Although the majority correctly points out that this claim fails, since Appellant has not raised a "potentially meritorious challenge" **and** since the transcript is available as part of the certified record, I do not believe this claim is waived because Appellant is alleging the continued unavailability of the transcript.

80 and n.13. Instead, we have been clear that with regard to claims of trial counsel ineffectiveness, "it is settled law that a petitioner must plead and present argument regarding trial counsel's conduct. Specifically, petitioner must assert that the claim is of arguable merit, that counsel had no reasonable trial strategy to pursue the chosen course of action, and that but for the act or omission in question, the outcome of the proceeding would have been different." *See Commonwealth v. Rush,* 576 Pa. 3, 838 A.2d 651, 657 (2003) (*citing Pierce*). Accordingly, as the instant case involves claims related to trial counsel's conduct, either Appellant has raised his claims in a manner sufficient for review under *Pierce* or they are waived. *Rush supra.*

Justice BAER joins this concurring opinion.

Justice SAYLOR, concurring.

I join the majority's holding and reasoning with regard to claims 1, 2, and 8, concur in the overall result of the majority decision, and write to the following points.

First, I have reservations similar to those expressed by Mr. Chief Justice Cappy concerning the majority's discussion of waiver. The majority finds fault with the state of Appellant's brief filed in this Court, since issues are framed and developed largely from the standpoint of underlying claims that are plainly waived because they were not raised in the trial court. *See* Majority Opinion at 693–95, 910 A.2d at 678–80. Moreover, the only potentially available claims (those of ineffective assistance of counsel) are addressed in the brief primarily via an umbrella, introductory statement and/or in a tag-on fashion at the conclusion of each individual claim asserted. However, the majority indicates that it will review the claims, because the law concerning the development of certain ineffectiveness claims was not clear at the time that Appellant filed his petition for post-conviction relief. *See id.* at 695, 910 A.2d at 679–80. Since the majority does not take issue with Appellant's claims in terms of the pleadings, I do not believe that its reasoning follows. Here, the flaw that is recognized is in briefs that were filed after the jurisprudence concerning ap-

pellate briefing of ineffectiveness claims was definitively clarified in *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014 (2003).[1]

Certainly, in light of the interests at stake, I have been a proponent of a fair degree of leeway in terms of the application of the waiver doctrine to both pleadings and briefs. *See, e.g., Commonwealth v. Rivers,* 567 Pa. 239, 266–70, 786 A.2d 923, 939–42 (2001) (Saylor, J., dissenting).[2] But differences among Justices concerning the appropriate degree of latitude had resulted in many divided decisions, of which *Rivers* is a prime example. Those differences were resolved in *McGill,* wherein various Justices compromised their positions in favor of a single, uniform approach.

Having traveled this route once, I have no wish to repeat it. Thus, I believe that capital counsel should be specifically admonished that, if they wish for their clients' claims to be considered as layered or derivative claims in any post-*McGill* brief, they must frame, structure, and develop them as such, per *McGill.* Under *McGill,* the umbrella and/or tag-on techniques are clearly unacceptable as methods for raising a derivative claim.[3]

With respect to briefs filed after the issuance of this opinion, I personally will no longer take up the cause for leeway

1. I read *McGill* as subsuming the appropriate methodology for raising claims of both appellate and trial counsel in appellate briefing. The clarification occurred in the former regard; as to the latter, *McGill* explained that there was no prevailing dispute.

2. I also understand the derivative nature of ineffectiveness claims and the corresponding need to develop the underlying claim as part of the analysis. The problem has arisen, however, that various counsel have emphasized the underlying claim to the near exclusion of any substantive development of the essential ineffectiveness overlay, thus hampering appropriate appellate review of the only potentially available claim.

3. If counsel feel the need to state waived, underlying claims outright for some purpose or purposes connected with federal habeas corpus review, this function would be more appropriately relegated to the umbrella and/or tag-on approach than would the development of the only claims that remain for this Court's review under *McGill* (*i.e.,* the derivative claims). Counsel are certainly also free to state the underlying claim in the alternative if there is a bona fide belief that they are not waived under this Court's present jurisprudence, but this does not excuse a correct development of a derivative claim per *McGill* if merits review on the derivative claim is also sought.

exceeding that available under *McGill,* as the Court has now spoken very clearly, and the debate concerning briefs such as the present one has consumed far too many of this Court's limited resources and is over. I also believe that there is too great a chance that the developing practice on the part of some attorneys of ignoring *McGill* in the application is tactical.

Next, I respectfully differ with the majority's rationale concerning Claim 3 (juror impartiality). *See* Majority Opinion at 703–04, 910 A.2d at 684–85. From my perspective, the outcome would be better framed in terms of a failure to establish prejudice relative to the ineffectiveness claim attaching to the failure to raise the issue on direct appeal, as it would be my position that trial counsel should have been permitted to engage in additional *voir dire* questioning given the existence of a prior business relationship between the juror and the district attorney. *But cf. Commonwealth v. Ellison,* 588 Pa. 1, 902 A.2d 419 (2006).

Regarding Claim 4 (lack of *Simmons* instruction), *see* Majority Opinion at 704–05, 910 A.2d at 685, it would have been my position that the matter should be decided under the standard articulated in *Kelly v. South Carolina,* 534 U.S. 246, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002). *See Commonwealth v. Spotz,* 587 Pa. 1, 109–113, 896 A.2d 1191, 1257–58 (2006) (Saylor, J., concurring and dissenting). However, I recognize that the Court determined in *Spotz* that *Kelly* established a new rule of law which is not to be retroactively applied to cases tried prior to its issuance. *See Spotz,* 587 Pa. at 86–87, 896 A.2d at 1242–46. Further, upon review of the record, it appears to me that the district attorney proceeded with a fair amount of restraint in his closing argumentation, focusing closely on the statutorily-enumerated aggravating circumstances, such that it is at least arguable that a *Simmons* instruction would not be due under *Kelly* in any event.

As to Claim 5 (advice of counsel), *see* Majority Opinion at 705–07, 910 A.2d at 685–87, to the extent that counsel's advice was that testimony by Appellant about life-history mitigation would "quite probably" permit cross-examination concerning

the circumstances of the offense, I believe that such guidance was inapt. In this regard, I agree with the observation of the United States Court of Appeals for the Third Circuit that penalty-phase testimony about childhood family background "[does] not bear even a tangential relationship to the substance of the charges against [the defendant]." *Lesko v. Lehman,* 925 F.2d 1527, (3d Cir.1991); *cf. Commonwealth v. Hughes,* 581 Pa. 274, 333–34 & n. 40, 865 A.2d 761, 796–97 & n. 40 (2004) (developing that the appropriate scope of cross-examination and rebuttal have always been defined according to the evidence they are designed to rebut).[4] I join the majority's decision to affirm the denial of relief on this claim because Appellant has not made a requisite showing of prejudice. In this regard, while Appellant asserts in his brief that he would have testified as to life-history mitigation had he not been erroneously advised by counsel, he offered no proof to this effect at his post-conviction evidentiary hearing (at which he did not testify), nor did he initially furnish an evidentiary proffer that would have implicated a hearing on the prejudice question.[5] Absent such proof credited by a factfinder, I find there to be an insufficient basis to support an award of post-conviction relief on this claim.

---

4. The majority's explication of *Lesko, i.e.,* that it stands for the proposition that a defendant cannot claim a Fifth Amendment privilege at the penalty phase relative to matters related to credibility or the subject matter of his testimony, *see* Majority Opinion at 707, 910 A.2d at 686, is certainly correct as far as it goes. But the majority does not recognize the salient point for which Appellant references *Lesko,* namely, that the circumstances of the offense charged does not bear a sufficient relationship to credibility or life-history-type mitigation testimony to support a waiver. *See Lesko,* 925 F.2d at 1543 ("We do not believe that Lesko's limited testimony constitutes a waiver of his right . . . to be free from prosecutorial comment about his failure to testify about the merits of the prosecution's case.").

5. Indeed, trial counsel's post-conviction testimony indicated that Appellant was substantially uncooperative as concerned the development of mitigation evidence for the penalty phase of trial.