J-S22020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AARON B. LACKEY | |
| Appellant | No. 1470 MDA 2016 |

Appeal from the PCRA Order June 23, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002529-2011

BEFORE:  SHOGAN, J., MOULTON, J., and PLATT, J.[*]

MEMORANDUM BY MOULTON, J.:          **FILED SEPTEMBER 21, 2017**

Aaron B. Lackey appeals from the June 23, 2016 order entered in the Dauphin County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. We affirm.

On direct appeal, we previously set forth the trial court's detailed discussion of the relevant factual history, which we adopt and incorporate herein.  **See Commonwealth v. Lackey**, No. 1356 MDA 2012, unpublished mem. at 1-9 (Pa.Super. filed Sept. 25, 2013).  At trial, Lackey testified that while he shot the homicide victim, he did so in self-defense.  **See id.** at 8.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The PCRA court summarized the procedural history of this matter as follows:

> On September 20, 2007, [Lackey] was arrested and charged with Criminal Homicide, Possession of Firearm Prohibited, Firearms Not to be Carried Without a License, and Conspiracy - Criminal Homicide.[1]  After a jury trial held from May 7, 2012, through May 11, 2012, [Lackey] was found guilty on one count of first degree murder[2] and one count of Firearms Not to be Carried Without a License. The charge of Possession of a Firearm Prohibited was *nolle prossed*, and the charge of Conspiracy - Criminal Homicide was withdrawn pursuant to Pa.R.Crim.P 561(B).  On May 11, 2012, [Lackey] was sentenced to life imprisonment without the possibility of parole on the Criminal Homicide charge, and incarceration at a State Correctional Facility for a period of not less than forty-two (42) months nor more than eighty-four (84) months on the Firearms Not to be Carried Without a License charge to run concurrently with the Criminal Homicide sentence. Additionally, [Lackey] was assessed a five thousand dollar ($5,000) fine on the firearms charge and ordered to pay restitution in the amount of $5,047.00 and costs of prosecution. [Lackey filed a motion to modify sentence, which the trial court granted on July 19, 2012, reducing the fine imposed to $1,000.]

> [Lackey] appealed to the Superior Court of Pennsylvania on [July] 25, 2012.  On September 25, 2013, the Superior Court affirmed in part, reversed in part (vacating as to the fine imposed for Carrying a Firearm Without a License) and remanded for resentencing on the matter of fines imposed.  The judgment relating to incarceration was left undisturbed.  [On December 30, 2013, the trial court entered an amended sentencing

_____

[1]  18  Pa.C.S.  §§  2501(a),  6105(a)(1),  6106(a)(1),  and  903, respectively.

[2] 18 Pa.C.S. § 2502(a).

order, vacating the fine and leaving all other aspects of Lackey's May 11, 2012 sentence the same. On April 2, 2014, the Supreme Court denied Lackey's petition for allowance of appeal].

On December 4, 2014, the Dauphin County Clerk of Courts received a *pro se* Motion for Post-Conviction Collateral Relief. On December 10, 2014, this Court appointed William M. Shreve, [E]squire, as PCRA [C]ounsel. On May 12, 2015, PCRA Counsel filed a Motion to Withdraw his PCRA representation averring that [Lackey]'s claims lack merit. Attached to Counsel's Motion was the statutorily required **Turner/Finley** "No-Merit" letter.[2]

> [2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988).

Memorandum Order, 10/6/15, at 1-2 ("PCRA Ct. Order").

On June 8, 2015, Lackey filed a motion for extension of time to file a response to counsel's motion to withdraw as well as a motion for leave to file an amended PCRA petition. On June 15, 2015, the PCRA court denied Lackey's motion for extension of time as premature, noting that it had not yet reviewed Lackey's PCRA petition nor disposed of counsel's motion to withdraw. The PCRA court also stated that notice pursuant to Pennsylvania Rule of Criminal Procedure 907 had not been issued.

On October 6, 2015, the PCRA court issued a memorandum opinion and order granting Lackey's counsel's motion to withdraw, notifying Lackey of its intent to dismiss his petition within 20 days, and advising Lackey that he could respond to the court's order in that time. On October 22, 2015, Lackey filed a motion for extension of time to file a response to his counsel's

motion to withdraw. On October 30, 2015, the PCRA court granted Lackey's motion, treating it as a motion for extension of time to file a response to the court's October 6, 2015 order, and ordering Lackey to file a response within 90 days. On February 1, 2016, Lackey filed a "Motion for amended [PCRA] petition; Memorandum of law; Response to motion of intent to dismiss." On June 23, 2016, the PCRA court issued a final order dismissing Lackey's PCRA petition. Lackey thereafter timely filed a notice of appeal.

Lackey raises the following issues on appeal:

> 1. Was trial counsel ineffective for failing to subject the [C]ommonwealth case to meaning full [sic] adversarial testing, object to prosecutorial misconduct, adequately cross examine witnesses?
>
> 2. Was P.C.R.A. Counsel, William Shreve, delinquent in withholding information and refusing to utilize said information given him by Mr. Lackey to amend his (Lackey's) P.C.R.A?
>
> 3. Was Mr. Lackey denied the right of meaningful appeal and collateral review through the denial of a complete and accurate depiction of what transpired in the lower court[?]
>
> 4. Did the [C]ommonwealth withhold potentially exculpatory evidence?
>
> 5. Did the prosecutor knowingly utilize testimony known to be inaccurate/false/untrue before the fact finder and not correct it?
>
> 6. Did Lackey fail to illuminate [his] issues in the record?

Lackey's Br. at 7-8 (PCRA court answers omitted) (some alterations in original).

Our standard of review from the denial of PCRA relief "is limited to examining whether the PCRA court's determination is supported by the

evidence of record and whether it is free of legal error." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa.Super. 2011).

## I.    Ineffective Assistance of Counsel

We first examine Lackey's claims that trial counsel was ineffective. When analyzing claims for ineffective assistance of counsel, we begin with the presumption that counsel was effective. ***Commonwealth v. Spotz***, 18 A.3d 244, 259-60 (Pa. 2011). "[T]he defendant bears the burden of proving ineffectiveness." ***Commonwealth v. Ligons***, 971 A.2d 1125, 1137 (Pa. 2009). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (internal quotation and citation omitted). "To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." ***Id.*** at 312 (internal quotations and alteration omitted).

### A.    Failure to Subject Case to Meaningful Adversarial Testing

Lackey first claims that counsel was ineffective for failing to subject the Commonwealth's case to meaningful adversarial testing.[3] Lackey asserts numerous ways in which trial counsel erred, including that counsel: failed to rebut testimony regarding the location from which Lackey arrived at the scene; failed to impeach the testimony of a witness who claimed that Lackey shot the victim on orders from an individual named January Jones because the victim was selling drugs in a certain area Jones controlled with the testimony of another witness who claimed that Jones did not control that area; failed to question witnesses as to the lack of conspiracy charges

_____

[3] Lackey's use of the phrase "meaningful adversarial testing" implicates the standard for ineffective assistance of counsel articulated by the United States Supreme Court in **United States v. Cronic**, 466 U.S. 648 (1984), which does not require a showing of prejudice. The Pennsylvania Supreme Court has explained:

> In **Cronic**, . . . the United States Supreme Court held that in limited circumstances, such as where there has been a complete denial of counsel at a critical stage of the trial, no specific showing of prejudice is necessary because errors of that magnitude "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." **Cronic**, 466 U.S. at 658 . . . . This principle is grounded in the Sixth Amendment to the United States Constitution, which requires defense counsel to function as an advocate for the accused and subject the prosecution's case to "**meaningful adversarial testing**," thereby promoting the search for truth that ensures a fair trial. **Id.** at 656 . . . .

**Commonwealth v. Williams**, 9 A.3d 613, 618-19 (Pa. 2010) (emphasis added). However, because trial counsel's actions, as articulated by Lackey, do not fall within the ambit of **Cronic**, **see id.** at 619, we analyze his claim using the three-part test for ineffectiveness outlined above.

regarding the incident; failed to elicit testimony that an individual named "Goddi/Gotti" was identified as two separate people; failed to establish that Alcohol, Tobacco, Firearms and Explosives ("ATF") Agent Ryan Kovach's testimony was inconsistent with his preliminary hearing testimony; and failed to question why the ATF "lost" or "destroyed" Lackey's clothing prior to trial.[4]  Lackey's Br. at 11-17.

We conclude that Lackey fails to show that there is a reasonable probability that, but for trial counsel's errors, the outcome of his trial would have been different.  Lackey testified that he shot the victim.  Although he claimed that he did so in self-defense, the jury was free to disbelieve that testimony.  Lackey now maintains that counsel should have done more at trial.  However, his bald claims of ineffectiveness, some of which argue that counsel should have done more with the evidence already presented to the jury, fail to demonstrate that any alleged error prejudiced him.  Accordingly, we agree with the PCRA court's determination that this claim lacks merit.

### B. Failing to Object to Prosecutorial Misconduct

---

[4] Lackey further argues that the evidence at trial supported his claim of self-defense and that there was no evidence that supported the Commonwealth theory that he fired at the victim first.  Lackey's Br. at 15. Insufficient evidence, however, is not a cognizable claim under the PCRA. *See Commonwealth v. Price*, 876 A.2d 988, 995 (Pa.Super. 2005) (finding that direct challenge to sufficiency of the evidence is not cognizable claim under the PCRA).

Lackey next claims that trial counsel was ineffective for failing to object to prosecutorial misconduct. Lackey avers that the Commonwealth knowingly presented false evidence. Lackey appears to contend that the Commonwealth presented Dawayne Chism's testimony that he saw Lackey and another individual between 11:00 p.m. and 11:30 p.m. on the night of the murder, even though the Commonwealth allegedly knew that other evidence, including phone records and the trial testimony of other witnesses, contradicted Chism's testimony.[5] In his brief, rather than establishing the falsity of the evidence presented by the Commonwealth, Lackey merely attacks its credibility. Lackey essentially asks this Court to reassess witness credibility, which we cannot do. *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa.Super. 2009); *see also Commonwealth v. Lee*, 956 A.2d 1024, 1029 (Pa.Super. 2008) ("[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony.") (quotation omitted). Because Lackey has not demonstrated the Commonwealth presented false evidence, his underlying claim lacks merit. Accordingly, we agree with the PCRA court's determination that Lackey's claim of ineffective assistance of counsel based on a failure to object to prosecutorial misconduct lacks merit.

_____

[5] Chism did not specify what time his encounter with Lackey occurred, testifying only that it was "[l]ike not yet like 12 [midnight,]" N.T., 5/8/12, at 251, and that it was between one and two hours and "closer to like an hour and a half" before he heard gunshots outside of his house, *id.* at 252.

## C.    Failure to Cross-examine Witnesses

Lackey next claims that trial counsel was ineffective for failing to adequately cross-examine witnesses.  Lackey's claim hinges on his trial counsel's alleged failure to cross-examine witnesses Dawayne Chism, Detective John O'Connor, and Siam Yeiser.[6]

Lackey admits that his trial counsel cross-examined Chism.  Lackey's Br. at 30; **see also** N.T., 5/8/12, at 259-279.  He argues, however, that his counsel failed to impeach Chism "as to the contradiction between his testimony and the phone records available in discovery and presented during [trial]."  Lackey's Br. at 32.  Lackey appears to contend that the phone records would have shown that Lackey was in a different location at the time that Chism testified that he saw Lackey.  However, Lackey fails to show that, but for trial counsel's failure to cross-examine on this topic, the outcome of Lackey's trial would have been different, particularly in light of Lackey's admissions that he was present at the scene of the crime and that he shot the victim.

Next, Lackey contends that counsel "declined to cross examine Detective [] O'Connor . . . on the contents of a deceased witness['s] (Geneva Yeiser) statement included in discovery."  **Id.** at 33.  Lackey alleges

_____

[6] Lackey's claims regarding trial counsel's failure to impeach Siam Yeiser appear in a separate section of Lackey's brief.  **See** Lackey's Br. at 13-14.

that, in her statement, Geneva Yeiser claimed that she saw someone other than Lackey commit the crime, and that counsel should have questioned Detective O'Connor about Geneva Yeiser's statement. Lackey, however, testified that he shot the victim in self-defense. Accordingly, he fails to explain how he was prejudiced by trial counsel's failure to cross-examine Detective O'Connor regarding the statement, and thus, has failed to establish that counsel was ineffective. *See Commonwealth v. Treiber*, 121 A.3d 435, 457 (Pa. 2015) (declining to deem counsel's performance constitutionally deficient where PCRA petitioner failed to explain how he was prejudiced specifically by counsel's failure to cross-examine witness regarding *crimen falsi*).

Finally, Lackey claims that trial counsel

> failed to impeach [Siam] Y[e]iser using Chism's testimony, and the questions of why the charges of [c]onspiracy to the incident were never lodged, being that the state's case was hinged on this conspiracy involving January Jones (J.J.), Anige Ali (Ali), Aaron Lackey, Terrell Spradley and someone identified as "Goddi" or "Gotti[.]"

Lackey's Br. at 14. The record shows that trial counsel conducted a lengthy cross-examination of Siam Yeiser on the first day of trial. N.T., 5/8/12, at 45-77, 79. Lackey claims that: (1) Siam Yeiser testified that Jones "employ[ed] Mr. Lackey to harm the [victim] in order to remove him" from a drug-selling territory; and (2) Chism testified that Jones did not control such a territory and that Chism himself sold drugs in that area without objection from any individual allegedly involved in the murder. Lackey's Br. at 13-14.

He claims counsel's cross-examination of Siam Yeiser should have included questioning regarding Chism's testimony. We conclude that Lackey has not demonstrated that he was prejudiced by trial counsel's failure to cross-examine Yeiser using Chism's testimony. Lackey fails to show that, but for trial counsel's error, the outcome of Lackey's trial would have been different, especially because Lackey admitted that he shot the victim and because the jury heard the testimony from both Yeiser and Chism. Accordingly, we agree with the PCRA's determination that Lackey's claim of ineffective assistance of counsel based on a failure to cross-examine witnesses lacks merit.

## II.  Lack of Complete Trial Transcripts

Lackey next claims that he has been denied meaningful appellate and collateral review because he has not been given complete transcripts of his trial. Lackey claims that the transcripts he has been provided[7] do not include the opening and closing statements.[8]  He contends the opening

---

[7] The record contains at least three orders granting Lackey's requests for trial and sentencing transcripts. *See* Orders, 8/24/12, 9/5/12, and 12/31/14. In the orders, the trial and PCRA courts ordered that transcripts be provided to trial counsel, appellate counsel, and PCRA counsel, respectively. The PCRA court denied Lackey's December 4, 2015 *pro se* motion for transcripts, and thereafter denied Lackey's July 25, 2016 "order for transcript" filed with his notice of appeal for this instant matter.

[8] Our review of the trial transcript in the certified record reveals that the parties' opening and closing statements were not transcribed. *See* N.T., 5/7/12, at 18; N.T., 5/10/12, at 687.

statements included the "reading of an unsworn statement given by Geneva

Yeiser." Lackey's Br. at 38.

Our Supreme Court has stated:

> To ensure the right of a criminal defendant to meaningful appellate review, we require "that he or she be furnished a full transcript or other equivalent picture of the trial proceedings." **Commonwealth v. Albrecht**, 554 Pa. 31, 720 A.2d 693, 701 (1998) (quoting **Commonwealth v. Shields**, 477 Pa. 105, 383 A.2d 844, 846 (1978)). Nevertheless, "[t]o be entitled to relief due to the incompleteness of the trial record the defendant must make some potentially meritorious challenge which cannot be adequately reviewed due to the deficiency in the transcript." **Id.**

**Commonwealth v. Marinelli**, 910 A.2d 672, 688 (Pa. 2006). Lackey

argues that he would have used Geneva Yeiser's statement to support his

claim that trial counsel failed to cross-examine Detective O'Connor as well as

to argue a claim of "cumulative effect of ineffective assistance of counsel and

prosecutorial misconduct." Lackey's Br. at 38.

Despite the incomplete transcript, we are able to adequately review

Lackey's claims. As stated above, Lackey's claim regarding trial counsel's

alleged failure to cross-examine Detective O'Connor fails because Lackey did

not demonstrate prejudice.[9] We are able to make this determination without

reviewing the opening statement, which allegedly included Geneva Yeiser's

_____

[9] In his brief, Lackey contends only that Geneva Yeiser "claims in her statement to have seen someone other than Mr. Lackey and Mr. Randolph commit the crime[.]" Lackey's Br. at 39.

statement. Accordingly, because Lackey fails to make a potentially meritorious challenge[10] which cannot be adequately reviewed due to the deficiencies in the trial transcripts, his claim must fail.

## III. Commonwealth's Alleged Withholding of Exculpatory Evidence

Lackey next argues that the Commonwealth withheld exculpatory evidence for years, in the form of the clothing he wore the night of the murder, "then destroyed it at the onset of a case in which that evidence would have proven crucial." Lackey's Br. at 17. Lackey's claim sounds in a **Brady**[11] violation. The Pennsylvania Supreme Court has stated: "To establish a **Brady** violation, an appellant must prove three elements: [1] the evidence [at issue] was favorable to the accused, either because it is exculpatory or because it impeaches; [2] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [3] prejudice ensued." **Commonwealth v. Paddy**, 15 A.3d 431, 450 (Pa. 2011) (internal quotation omitted; alterations in original).

At trial, Agent Kovach testified that he took possession of a bag containing clothing from Lori Allen's house to test whether the clothing had gunshot residue on it. N.T., 5/9/12, at 458. Agent Kovach further testified

---

[10] Lackey also states that the record is missing testimony from Lori Allen and Detective O'Connor. Lackey's Br. at 39. However, Lackey does not explain what potentially meritorious challenges cannot be reviewed due to the alleged absence of this testimony.

[11] **Brady v. Maryland**, 373 U.S. 83 (1963).

that no testing was subsequently performed, and that the clothing was "probably" destroyed "right before the time [Lackey] was arrested." *Id.* at 459. Lackey, however, does not allege that the clothing would have constituted exculpatory or impeachment evidence and does not explain how he was prejudiced by the alleged destruction of the evidence. Accordingly, this claim fails.

## IV. Commonwealth's Alleged Failure to Correct Inaccurate/False/Untrue Testimony

Lackey next claims that the Commonwealth used testimony "known to be inaccurate/false/untrue" at trial and then failed to correct such testimony. This is identical to the substantive claim underlying Lackey's claim of trial counsel's ineffectiveness for failing to object to prosecutorial misconduct, which we have already concluded lacks merit. Accordingly, we conclude that this claim lacks merit.

## V. Remaining Issues

We conclude that Lackey has waived his second and sixth issues – whether PCRA counsel was delinquent in withholding information and refusing to use information given to him by Lackey to amend Lackey's petition and whether Lackey "fail[ed] to illuminate [his] issues" – because he fails to develop these claims in the argument section of his brief. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful

- 14 -

fashion capable of review, that claim is waived."). Further, although Lackey devotes a substantial portion of his brief to discussing trial counsel's alleged failure to call certain witnesses, *see* Lackey's Br. 18-24, this claim is waived because Lackey did not include it in his statement of questions involved. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").[12]

Order affirmed.

_____

[12] Even if Lackey had not waived this claim, we would find it meritless. Courts apply the following standard to determine whether counsel was ineffective for failing to call witnesses:

> To establish that counsel was ineffective for failing to call a witness, Appellant must demonstrate that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007). Lackey identifies three witnesses that he claims trial counsel failed to call: Anije Ali, Christopher Sciarra, and Michelle Brown. With regard to Sciarra and Brown, Lackey fails to demonstrate that either of these witnesses was available or willing to testify for the defense. Lackey avers that Ali was available and willing to testify on Lackey's behalf and that he would have testified "to the falsity of allegations made as to a drug organization involving the employees of the 'Sharper Image Barbershop,' meeting and plots to murder as purported by . . . Siam Yeiser." Lackey's Br. at 20. Lackey alleges that the absence of Ali's testimony allowed Yeiser's testimony and "the prosecutor's allegations made thereby, to go unrefuted." *Id.* 20-21. We conclude that the failure to call Ali was not so prejudicial as to have denied Lackey a fair trial.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/21/2017